IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 105,504

STATE OF KANSAS,
*Appellee*,

v.

LARRY G. OVERMAN,
*Appellant.*

SYLLABUS BY THE COURT

1.

The State has the burden of proving that a search and seizure was lawful.

2.

A warrantless search by a police officer is per se unreasonable under the Fourth Amendment to the United States Constitution, unless the State can fit the search within one of the recognized exceptions to the warrant requirement. One of those exceptions is probable cause plus exigent circumstances, a subclass of which is known as the automobile exception.

3.

Under the automobile exception, the mobility of the vehicle establishes the requisite exigency, thereby permitting a vehicle search based on probable cause alone. Probable cause to search the vehicle can be established if the totality of the circumstances indicates there is a fair probability that the vehicle contains contraband or evidence.

1

4.

Multiplicity occurs when a single offense is charged in more than one count of the charging document and such double charging is proscribed because it creates the potential for multiple punishments for a single crime in contravention of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Section 10 of the Kansas Constitution Bill of Rights.

5.

In considering a double jeopardy issue, the overarching inquiry is whether the convictions are for the same offense. There are two components to this inquiry, both of which must be met for there to be a double jeopardy violation:  (1) Do the convictions arise from the same conduct? and (2) By statutory definition are there two offenses or only one?

6.

If the double jeopardy issue arises from multiple convictions of different statutes, in other words if it is a multiple-description issue, the same elements test is applied. The same elements test asks whether each offense contains an element not contained in the other.

7.

When there is a clear expression of legislative intent to provide multiple punishments for the same conduct, double jeopardy is not violated even if overlapping provisions have identical elements. The legislature intended separate punishments for violations of K.S.A. 2007 Supp. 65-7006(a) and K.S.A. 2007 Supp. 65-4152(a)(3).

8.

*Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), does not require a jury to find the fact of a prior conviction beyond a reasonable doubt.

Review of the judgment of the Court of Appeals in an unpublished opinion filed December 14, 2012. Appeal from Cherokee District Court; OLIVER KENT LYNCH, judge. Opinion filed April 17, 2015. Judgment of the Court of Appeals affirming the district court on the issues subject to our grant of review is affirmed. Judgment of the district court on those issues is affirmed.

*John Grube*, of Kansas Appellate Defender Office, argued the cause, and *Matthew J. Edge*, of the same office, was on the brief for appellant.

*Natalie A. Chalmers*, assistant solicitor general, argued the cause, and *Derek Schmidt*, attorney general, was with her on the brief for appellee.

The opinion of the court was delivered by

JOHNSON, J.: A jury convicted Larry G. Overman of six drug offenses, and he appealed those convictions and corresponding sentences to the Court of Appeals, which affirmed in part and reversed in part. *State v. Overman*, No. 105,504, 2012 WL 6634362 (Kan. App. 2012) (unpublished opinion). Overman seeks our review of that portion of the Court of Appeals' decision that was adverse to him, including the affirmance of the district court's denial of his suppression motion; the affirmance of his convictions for the separate offenses of possessing red phosphorous and iodine and possessing drug paraphernalia with intent to manufacture; and sanctioning the use of his prior convictions to enhance his sentence. The State did not seek review of the portion of the Court of Appeals' opinion in favor of Overman. Finding no error on the issues presented in Overman's petition for review, we affirm.

3

FACTUAL AND PROCEDURAL OVERVIEW

The charges against Overman arose out of a traffic stop on October 4, 2007, in Baxter Springs. Two days earlier, Baxter Springs Police Officer David Groves had seen Overman and Sharlotte Carey traveling in a Chevy Citation, which was registered in both of their names. The officer knew both persons, and, because he believed that Overman had previously been involved in illegal narcotic activity, the officer conducted a criminal background check and driver's license scan on both Overman and Carey. That inquiry revealed that both had prior drug charges and arrests and that Overman currently had a suspended driver's license. That information prompted Officer Groves to enlist the aid of Sergeant Joseph Sparks and Officer Jon Hunt to effect the traffic stop on October 4.

After the stop was effected in a parking lot, the two exited the vehicle. Sergeant Sparks had Overman sit on the ground by the front of his patrol car, while the sergeant conferred with Officer Groves. Then, the sergeant advised Overman of the reason for the stop and that he was going to be arrested. In connection with a patdown search for weapons, the sergeant discovered that Overman was carrying coffee filters, which the sergeant knew from training and experience could be used in the manufacturing of methamphetamine. The sergeant then escorted the handcuffed Overman to the backseat of his patrol car.

Meanwhile, Officer Groves found a small black pouch on the ground near where Overman had just been sitting. The pouch contained what appeared to be a marijuana cigarette, $330, a baggy containing white powder, and three small pieces of plastic with a white powdery substance on them. From their training and experience, the officers thought the white powder was methamphetamine.

4

Sergeant Sparks read Overman his *Miranda* rights and asked about the pouch. Overman claimed ownership and surmised that it must have fallen from his lap when he exited the vehicle. Further, Overman admitted that the hand-rolled cigarette was marijuana, but he claimed that the white powder was "BC Powder" and that it would not test positive for methamphetamine.

At the same time, Officer Groves was interviewing Carey, who he had handcuffed but not formally arrested. Carey said that several days earlier she had accompanied Overman to a residence, where she presumed Overman had manufactured methamphetamine, and afterwards they both used hypodermic needles to inject methamphetamine. Carey told the officer that the needles might still be in the Citation.

After sharing their respective information, the officers decided to search the Citation. Their initial search revealed several items consistent with the manufacturing of methamphetamine, so the officers terminated the search, towed the vehicle to headquarters, and obtained a search warrant. The subsequent warrant search revealed additional items associated with the manufacture of methamphetamine.

The State charged Overman with driving with a suspended license and multiple drug crimes. Overman filed a motion to suppress "all evidence seized as a result of the illegal detention of his person and automobile." At the suppression hearing, both arresting law enforcement officers testified that Overman's vehicle was searched incident to his arrest. The sergeant said that Overman was arrested for the crimes of possession of marijuana and possession of drug paraphernalia, but he further explained that because they had discovered the coffee filters, the marijuana cigarette, and the white powder he thought was methamphetamine, and because of Carey's statement about hypodermic needles, he thought the vehicle might contain items used to manufacture methamphetamine.

5

The district court denied Overman's motion to suppress based on the search incident to arrest exception to the warrant requirement. The court found that "the concept of arrest is broad enough for a vehicle search incident to lawful arrest to include searches relating to crimes discovered in the course of the arrest process before the search is conducted." The court reasoned that the officers had probable cause to arrest Overman for possession of marijuana and "[p]robable cause for an arrest for possession of paraphernalia could certainly be argued." The court also noted that because Carey had not been arrested, she could have left with the vehicle and the evidence could have been destroyed, *i.e.*, exigent circumstances existed.

At trial, Overman preserved his objection to the vehicle search with a standing objection. In addition to the trial testimony of the arresting law enforcement officers, Kansas Bureau of Investigation (KBI) Drug Task Force Agent Ronnie Light testified that the vehicle search revealed numerous items associated with the manufacture of methamphetamine: a sealed bottle of strong iodine, a Pyrex glass dish with a red residue, a blue cooler containing a water jug turned upside down, coffee filters containing iodine crystals, an opened canister of acetone, four unopened bottles of Heet brand antifreeze, a light bulb with red sludge, a t-shirt with white sludge, multiple boxes of matches, one box of which contained 300 match books with missing striker plates and match heads, a bucket containing white crystals, a half-full bottle of lighter fluid, a pair of corroded scissors, a glass measuring cup, a hot plate, and a knife with residue. As a result of the items found, Light concluded that the manufacture of methamphetamine had occurred utilizing the "Red P" method, in which a reaction vessel is used to combine ephedrine, iodine, and red phosphorous. Light explained that the striker plates on match books contain the red phosphorous needed for the manufacturing process.

6

The search also revealed four hypodermic needles, which Light explained could be used to inject methamphetamine into the body.

KBI testing confirmed that the cigarette was marijuana and that iodine, red phosphorous, and methamphetamine were present on items taken from the car.

The jury convicted Overman of manufacturing a controlled substance in violation of K.S.A. 2007 Supp. 65-4159; possession of red phosphorous and iodine with intent to manufacture a controlled substance in violation of K.S.A. 2007 Supp. 65-7006; possession of drug paraphernalia with the intent to manufacture methamphetamine in violation of K.S.A. 2007 Supp. 65-4152(a)(3); possession of methamphetamine in violation of K.S.A. 2007 Supp. 65-4160(a); possession of marijuana in violation of K.S.A. 65-4162(a)(3); and possession with intent to use drug paraphernalia in violation of K.S.A. 2007 Supp. 65-4152(a)(2). The district court sentenced Overman to 324 months' imprisonment.

In addition to the issues raised in this petition for review, Overman's appeal to the Court of Appeals included claims of error that were successful. He convinced the panel that the district court had improperly instructed the jury on the definition of drug paraphernalia, resulting in a reversal of his conviction for possession of drug paraphernalia with the intent to manufacture methamphetamine. *Overman*, 2012 WL 6634362, at *7. The Court of Appeals also agreed with Overman's argument that the district court had misclassified the severity level of his conviction for possession of red phosphorus and iodine with intent to manufacture. 2012 WL 6634362, at *9-10. Based on *State v. Adams*, 294 Kan. 171, 187, 273 P.3d 718 (2012) and *State v. Snellings*, 294 Kan. 149, 155-59, 273 P.3d 739 (2012), the panel vacated his sentence for that crime based on a severity level 2 drug felony and remanded for resentencing based on a severity level 4

7

drug felony. 2012 WL 6634362, at *9-10. Without a cross-petition from the State, those issues are not now before this court for review.

Overman first argues that the district court erred in denying his challenge to the warrantless search of his vehicle. As noted, some of the evidence used to convict Overman was obtained pursuant to a warrant. But Overman contends that the unlawful warrantless vehicle search tainted the subsequent warrant and its execution, and the State does not refute that claim. Instead, the State ultimately relies on the argument that the initial vehicle search was lawful based upon the probable cause plus exigent circumstances exception to the warrant requirement. We agree with the State's latest argument.

*Standard of Review*

The district court's factual findings on a motion to suppress are reviewed for substantial competent evidence, but the legal conclusions to be drawn from the evidence are reviewed de novo. *State v. Pettay*, 299 Kan. 763, 768, 326 P.3d 1039 (2014) (citing *State v. Daniel*, 291 Kan. 490, 495, 242 P.3d 1186 [2010], *cert denied* 131 S. Ct. 2114 [2011]).

*Analysis*

The State has the burden of proving that a search and seizure was lawful. *State v. Thompson*, 284 Kan. 763, 772, 166 P.3d 1015 (2007). *State v. Sanchez-Loredo*, 294 Kan. 50, 55, 272 P.3d 34 (2012), sets out the fundamental constitutional principles at issue when police conduct a warrantless search:

"We start with the premise that a warrantless search by a police officer is per se unreasonable under the Fourth Amendment unless the State can fit the search within one of the recognized exceptions to the warrant requirement. Those recognized exceptions are: 'consent; search incident to a lawful arrest; stop and frisk; probable cause plus exigent circumstances; the emergency doctrine; inventory searches; plain view or feel; and administrative searches of closely regulated businesses.' [*State v.*] *Fitzgerald*, 286 Kan. [1124,] 1127[, 192 P.3d 171 (2008)]."

In the district court, the State argued that two exceptions to the warrant requirement were present in this case: (1) search incident to a lawful arrest; and, (2) probable cause plus exigent circumstances. The district court ruled in favor of the State based upon the search incident to arrest exception to the warrant requirement, then codified at K.S.A. 22-2501(c). But in a Supreme Court Rule 6.09(b) (2014 Kan. Ct. R. Annot. 52) letter, the State conceded that this court's recent decisions in *State v. Julian*, 300 Kan. 690, 695-96, 333 P.3d 172 (2014), and *Pettay* negate its reliance on the search incident to arrest exception in this case.

We agree with the State's concession. At the time of Overman's October 2007 arrest, K.S.A. 22-2501 permitted a law enforcement officer effecting a lawful arrest to reasonably search the arrested person and "the area within such person's immediate presence" for certain purposes. *Pettay* observed that the plain language of K.S.A. 22-2501 had statutorily controlled the physical scope of a search incident to arrest for a long time. 299 Kan. at 765. The physical area that is "within such person's immediate presence" does not extend to a defendant's vehicle when the defendant is handcuffed and sitting in the patrol car.

But in the district court, and now on review, the State raised the alternative basis that the arresting officers also had probable cause to believe that the vehicle contained contraband in the form of drugs and drug paraphernalia. Probable cause plus exigent

9

circumstances is a recognized exception to the Fourth Amendment warrant requirement. *Sanchez-Loredo*, 294 Kan. at 55. Moreover, a subclass of that exception is the "automobile exception," whereby the mobility of the vehicle establishes the requisite exigency. 294 Kan. at 58. Here, there was no dispute that Overman's vehicle was mobile. The only question is whether the district court's findings of fact supported the requisite probable cause to search Overman's vehicle.

"'Probable cause' to search a vehicle can be established if the totality of the circumstances indicates there is a 'fair probability' that the vehicle contains contraband or evidence." 294 Kan. at 55. "Contraband" is defined as "[g]oods that are unlawful to import, export, produce, or possess." Black's Law Dictionary 389 (10th ed. 2014). In the district court, the State quoted from *State v. Campbell*, 24 Kan. App. 2d 553, 555, 948 P.2d 684, *rev. denied* 263 Kan. 887 (1997), where the Court of Appeals rejected Campbell's argument that the search of his vehicle violated his Fourth Amendment rights:

> "[Campbell] argues that he did not consent to the search, nor was it a search incident to a lawful arrest. Campbell has simply missed the target in his argument as to the dispositive legal principle.

> "In *State v. Jaso*, 231 Kan. 614, Syl. ¶ 5, 648 P.2d 1 (1982), the Supreme Court held:

> "'When police officers have made a lawful stop of a vehicle and have probable cause to believe that contraband is in the vehicle, the officers may search every area of the vehicle and its contents which might reasonably contain the contraband without the necessity of first obtaining a warrant.'

> "After being arrested, Campbell told Officer Regan that there was contraband in the car. Thus, the subsequent search of the car was not justified as incidental to an arrest or Campbell's consent; the search was based upon Officer Regan's probable cause that the

10

car contained contraband. The trial court did not err in its ruling upon this issue." 24 Kan. App. 2d at 555.

Similarly, in this case, the district court's findings of fact established probable cause to search Overman's vehicle, even if the circumstances did not establish a search incident to arrest exception. Specifically, the district court found that Overman's passenger had told the police that the hypodermic needles she and Overman had previously used to inject methamphetamine might still be in the car. It is illegal to possess drug paraphernalia, which includes "needles . . . used or intended for use in parenterally injecting controlled substances into the human body." K.S.A. 2007 Supp. 65-4150(c)(11); K.S.A. 2007 Supp. 65-4152. Additionally, the court found that Overman had admitted ownership of the marijuana and admitted that the pouch in which it was found probably fell off of his lap as he exited the vehicle, *i.e.*, there had been drugs in the vehicle before the stop. Further, the coffee filters found on Overman's person were unusual items for a person's pocket, but commonly known to be used in the manufacturing of methamphetamine. But *cf. State v. Fisher*, 283 Kan. 272, 305, 154 P.3d 455 (2007) (discussing legitimate uses for ether). In short, when the totality of the officers' information is assessed through the lens of a trained law enforcement officer, that evidence supported probable cause to believe that Overman's vehicle contained contraband.

Accordingly, the automobile exception applied under the facts established by the State and found by the district court, and, therefore, the denial of Overman's motion to suppress was the correct result. See *State v. Prine*, 297 Kan. 460, 481, 303 P.3d 662 (2013) (affirming district court as right for wrong reasons).

Before commencing the next issue, we pause to address the concurrence's contention that Overman's petition for review was inadequate to challenge the panel's

11

alternative ruling that the automobile exception was also applicable. As noted above, the fact that the search was conducted without a warrant established it as per se unreasonable, *i.e.*, leading to illegally obtained evidence, unless the State carried its burden to establish a recognized exception to the warrant requirement. Clearly, then, to determine whether the trial court erroneously admitted illegally obtained evidence fairly includes the question of whether the State proved an exception that would validate an otherwise per se unreasonable search.

## MULTIPLICITY

Next, Overman argues that his convictions for possession of red phosphorous and iodine with intent to manufacture and possession of drug paraphernalia with intent to manufacture were multiplicitous. To clarify, Overman does not present a statutory argument under K.S.A. 21-3107 or challenge these two convictions on any other basis than a double jeopardy violation. Our review is limited accordingly.

Multiplicity occurs when a single offense is charged in more than one count of the charging document and such double charging is proscribed because it creates the potential for multiple punishments for a single crime in contravention of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Section 10 of the Kansas Constitution Bill of Rights. *State v. Carr*, 300 Kan. 1, 163, 331 P.3d 544 (2014) (citing *State v. Scott*, 286 Kan. 54, 65, 183 P.3d 801 [2008]).

*Standard of Review*

"[T]he issue of whether convictions are multiplicitous is a question of law subject to unlimited review." *State v. Schoonover*, 281 Kan. 453, 462, 133 P.3d 48 (2006).

12

*Analysis*

Overman's conviction for possession of red phosphorous and iodine with intent to manufacture a controlled substance was governed by K.S.A. 2007 Supp. 65-7006(a), which provided: "(a) It shall be unlawful for any person to possess ephedrine, pseudoephedrine, *red phosphorous*, lithium metal, sodium metal, *iodine*, anhydrous ammonia, pressurized ammonia or phenylpropanolamine, or their salts, isomers or salts of isomers *with intent to use the product to manufacture a controlled substance*." (Emphasis added.)

Possession of drug paraphernalia with intent to manufacture is proscribed in a different statute, K.S.A. 2007 Supp. 65-4152(a)(3), which reads in relevant part: "(a) No person shall use or possess with intent to use: . . . (3) any drug paraphernalia to . . . manufacture . . . a controlled substance in violation of the uniform controlled substances act."

In turn, "drug paraphernalia" is defined as "all equipment and materials of any kind which are used . . . in . . . manufacturing . . . a controlled substance and in violation of the uniform controlled substances act." K.S.A. 2007 Supp. 65-4150(c).

*Schoonover* is our recent seminal case on double jeopardy/multiplicity claims. After a comprehensive review of federal and Kansas analyses, *Schoonover* announced the following analytical framework:

> "In considering a double jeopardy issue, the overarching inquiry is whether the convictions are for the same offense. There are two components to this inquiry, both of which must be met for there to be a double jeopardy violation: (1) Do the convictions arise from the same conduct? and (2) By statutory definition are there two offenses or only one?" 281 Kan. at 496.

13

Here, in applying the first component of the inquiry, the Court of Appeals opined that "[i]t is undisputed that Overman was convicted based on one methamphetamine manufacturing event." *Overman*, 2012 WL 6634362, at *8. Accordingly, the panel turned to the second inquiry, under which

> "the test to be applied depends on whether the convictions arose from one or two statutes. If the double jeopardy issue arises from convictions for multiple violations of a single statute, the unit of prosecution test is applied. If the double jeopardy issue arises from multiple convictions of different statutes, in other words if it is a multiple-description issue, the strict-elements test is applied." *State v. Appleby*, 289 Kan. 1017, 1027, 221 P.3d 525 (2009) (citing *Schoonover*, 281 Kan. at 497).

Overman's petition for review concedes that *Schoonover*'s "same elements" test (sometimes referred to as the "strict-elements" test) applies in his case because the two convictions he claims are multiplicitous arose from alleged violations of two different statutes:  K.S.A. 2007 Supp. 65-7006 and K.S.A. 2007 Supp. 65-4152(a). Moreover, he cites to *Schoonover*, 281 Kan. at 467, as support for his statement that "[t]he same elements test asks whether each offense contains an element not contained in the other. If not, then they are the same offense, and double jeopardy bars multiple punishment." But then, inexplicably, he declares that we must reach a result directly opposite of the result we reached in *Schoonover*, based solely upon an argument that *Schoonover* specifically rejected, *i.e.*, the K.S.A. 2007 Supp. 65-7006 product(s) possessed by the defendant also fit the definition of drug paraphernalia under K.S.A. 2007 Supp. 65-4152(a)(3).

*Schoonover* involved an elements comparison of the same statutes as this case, K.S.A. 65-7006(a) and K.S.A. 65-4152(a)(3). The only difference in the two cases is the particular products that the respective defendant was alleged to have possessed; Schoonover was charged with possessing ephedrine or pseudoephedrine, whereas

14

Overman was charged with possessing red phosphorous and iodine. All of those products are part of the proscribed list in K.S.A. 65-7006(a), and the factual distinction of a different listed product has no bearing on our legal analysis of the statutes' comparative elements.

The *Schoonover* defendant argued that possession of ephedrine or pseudoephedrine under K.S.A. 65-7006 and possession of drug paraphernalia under K.S.A. 65-4152(a)(3) were multiplicitous because, by statutory definition, the single act of possessing ephedrine/pseudoephedrine constituted both crimes, *i.e.*, he was being punished twice for the single offense of possessing ephedrine/pseudoephedrine. Overman makes the same argument with respect to his possession of red phosphorous and iodine, *i.e.*, the statutory definition of drug paraphernalia results in his being punished twice for the single offense of possessing red phosphorous and iodine. Indeed, as the Court of Appeals observed, the instructions given to Overman's jury could have resulted in his being convicted of "two different offenses . . . based on his possession of red phosphorous and iodine." *Overman*, 2012 WL 6634362, at *8.

But *Schoonover* rejected that argument, characterized the relationship between K.S.A. 65-7006 and K.S.A. 65-4152(a)(3) as "'overlapping rather than identical,'" and opined that "simply because the statutes overlap, there is not necessarily a double jeopardy violation." 281 Kan. at 503-04. The *Schoonover* court relied upon the rationale that K.S.A. 65-7006 requires proof of possession of ephedrine/pseudoephedrine whereas K.S.A. 65-4152(a)(3) does not, but rather "K.S.A. 65-4152(a)(3) . . . applies to possession of other paraphernalia as well." 281 Kan. at 503 (discussing and quoting from *State v. Cherry*, 279 Kan. 535, 541, 112 P.3d 224 [2005]). In short, *Schoonover* established the point of law that the elements of K.S.A. 65-7006 and K.S.A. 65-4152(a)(3) are not identical.

15

Although Overman does not explicitly ask us to overrule the ultimate holding in *Schoonover*, that is what we would have to do to accept his argument on this issue. See *Crist v. Hunan Palace, Inc.*, 277 Kan. 706, 715, 89 P.3d 573 (2004) (quoting *Samsel v. Wheeler Transport Services, Inc.*, 246 Kan. 336, 356, 789 P.2d 541 [1990], *overruled on other grounds Bair v. Peck*, 248 Kan. 824, 844, 811 P.2d 1176 [1991]) (doctrine of stare decisis provides that "'once a point of law has been established by a court, that point of law will generally be followed by the same court and all courts of lower rank in subsequent cases where the same legal issue is raised'"). Granted, subsequently, in *State v. Thompson*, 287 Kan. 238, 259, 200 P.3d 22 (2009), we clarified that when overlapping statutory provisions have identical elements, the rule of lenity "will usually mean the legislature intended only one punishment." Nevertheless, when there "is a clear expression of legislative intent to provide multiple punishments for the same conduct, double jeopardy is not violated even if overlapping provisions have identical elements." 287 Kan. at 259 (discussing *Schoonover*). *Schoonover* found such a clear expression of legislative intent in the context of K.S.A. 65-7006(a) and K.S.A. 65-4152(a)(3), the statutes at issue in Overman's challenge. 281 Kan. at 501-04.

Consequently, we affirm the Court of Appeals' holding that Overman's convictions for both possession of red phosphorous and iodine with intent to manufacture methamphetamine and possession of drug paraphernalia with intent to manufacture methamphetamine were not multiplicitous as a violation of double jeopardy, based upon this court's precedent in *Schoonover*.

## *APPRENDI* CHALLENGE TO SENTENCE

Finally, Overman argues that his rights under the Sixth and Fourteenth Amendments were violated because the State did not include his prior convictions in the charging document nor did it prove those convictions to the jury beyond a reasonable

16

doubt. Overman contends that such a process is required by *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). But he acknowledges that this court has specifically rejected his argument, holding in *State v. Ivory*, 273 Kan. 44, 41 P.3d 781 (2002), that *Apprendi* does not require the jury to find the fact of a prior conviction. Moreover, we have repeatedly confirmed *Ivory*'s holding. See, *e.g.*, *State v. Adams*, 294 Kan. 171, 185, 273 P.3d 718 (2012). The imposition of the enhanced sentence was not unconstitutional.

Affirmed.

* * *

BILES, J., concurring:  I concur in the result as to the suppression issue. I write separately only to note that Overman's petition for review ignored the alternative basis for the Court of Appeals ruling:  that the search of his vehicle was lawful because of the automobile exception. *State v. Overman*, No. 105,504, 2012 WL 6634362, at *4 (Kan. App. 2012) (unpublished opinion). Therefore, I would affirm the panel's decision on the search question because its alternative rationale was not challenged. This makes the majority's analysis on this issue unnecessary.

Under Supreme Court Rule 8.03(a)(4)(C) and (h)(1) (2014 Kan. Ct. R. Annot. 77), a party must specify what issues were decided erroneously by the Court of Appeals. Otherwise, that issue is not properly before the Supreme Court on a petition for review. See *State v. Trujillo*, 296 Kan. 625, 634-35, 294 P.3d 281 (2013) (declining to reach merits of evidence suppression issue when defendant failed to petition for review of a Court of Appeals holding that defendant failed to preserve issue for appeal by failing to lodge contemporaneous objection at trial); see also *State v. Sanchez-Laredo*, 294 Kan. 50, 53, 272 P.3d 34 (2012) ("Before proceeding, we pause to clarify the issues we will not be

17

addressing[,] . . . [because] Sanchez-Loredo's petition for review did not challenge these holdings.").

I would hold that Overman did not specify as a point of error or otherwise address the alternative basis for the panel's decision, so the suppression issue is not properly before us on review. I agree with the multiplicity and *Apprendi* sections of the opinion.

NUSS, C.J., joins in the foregoing concurrence.