NOT DESIGNATED FOR PUBLICATION

No. 114,451

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Adoption of
D.G.G. and J.L.G.


MEMORANDUM OPINION


Appeal from Montgomery District Court; FREDERICK WILLIAM CULLINS, judge. Opinion filed
March 11, 2016. Affirmed.


*Jennifer L. Goheen* and *Rachel E. Lomas*, of Hite, Fanning & Honeyman L.L.P., of Wichita, for
appellant father.


*Paul M. Kritz*, of Hall, Levy, Devore, Bell, Ott & Kritz, P.A., of Coffeyville, for appellee
stepfather.


Before MALONE, C.J., SCHROEDER, J., and BURGESS, S.J.


*Per Curiam*:  J.R.G. (Father) appeals the district court's termination of his parental
rights and the granting of R.C.'s (Stepfather) petition to adopt D.G.G. and J.L.G., Father's
two children. Father alleges:  (1) The district court erred by not remanding the case to the
district magistrate judge for another trial, and (2) there was insufficient evidence
presented to support the termination of his parental rights and the granting of the
stepparent adoption. We disagree. The record reflects the district court did not err by
failing to remand the case to the district magistrate judge. There was more than sufficient
evidence to support the termination of Father's parental rights and the approval of the
Stepfather adoption. We affirm.

1

T.C. (Mother) and Father, formerly husband and wife, are the natural parents of their daughter, D.G.G., who was born in 2008, and their son, J.L.G., who was born in 2011. In July 2011, the family was living in California. Father was in the Navy and began a 5-month deployment overseas. After Father deployed, Mother found Father had created a fake Facebook account and posted several disturbing comments concerning their children. Mother contacted authorities and the Naval Criminal Investigative Service (NCIS) began an investigation. Mother then emailed the Father and told him she was taking the children and returning to her home in Coffeyville.

One week after Father returned from deployment, NCIS contacted him regarding the investigation surrounding his children. Father was interviewed twice by NCIS during which Father confessed to sexually abusing his children in the months prior to his July 2011 deployment. Father was charged under the Uniform Code of Military Justice with multiple sexually violent crimes including rape and sodomy involving both children. A military court convicted Father in March 2013. He is currently at the United States Disciplinary Barracks in Fort Leavenworth serving his 140-month term of imprisonment. Father now claims he is innocent and contends he falsely confessed. Father's direct appeal to the United States Naval and Marine Corps Court of Criminal Appeals resulted in his convictions being affirmed.

Upon returning to Kansas, Mother filed a petition for divorce on December 22, 2011. At the final hearing on March 22, 2012, the divorce was granted and sole custody of the children was awarded to Mother. The decree of divorce denied Father any direct or indirect contact with the children. Father's last contact with his children was in July 2011.

On November 8, 2012, Mother married Stepfather. On August 28, 2013, Stepfather filed a petition to adopt D.G.G. and J.L.G. Mother consented to the adoption;

Father objected. In his petition, Stepfather alleged Father had failed to assume the duties of a parent for the 2 years preceding the filing of the petition and therefore his consent was unnecessary. In an amended petition filed on July 8, 2014, Stepfather alleged Father was an unfit parent and his unfitness prevented him from assuming the duties of a parent for the 2 years preceding the filing of the petition.

A nonlaw trained district magistrate judge presided over the trial of the stepparent adoption on November 4, 2014. The court heard testimony from Stepfather, Mother, Father, and members of Father's family, including his parents who had been granted intervenor status. Father's parents attempted to introduce evidence of Father's child support payments. The court sustained Stepfather's objection to the evidence arguing the evidence was irrelevant because the amended petition was based on the Father's alleged unfitness and not his failure to provide financial support.

On December 9, 2014, the district magistrate judge filed a memorandum of decision terminating Father's parental rights and granting the Stepfather's petition to adopt D.G.G. and J.L.G. The district magistrate judge found Father was unfit and his consent was not required. The Father's parental rights were terminated pursuant to K.S.A. 2015 Supp. 59-2136(d) and K.S.A. 2015 Supp. 59-2136(h)(1)(B). Father appealed the district magistrate judge's decision to the district court judge. On July 29, 2015, the district court judge determined, based on the totality of the circumstances, Father was unfit and it was in the best interests of the children to terminate his parental rights. The district court granted the children's adoption by Stepfather. Father now timely appeals the district court judge's decision.

ANALYSIS

*De Novo Review of the District Magistrate Judge's Ruling*

Father argues the district court judge should have remanded the case to the district magistrate judge when he denied the admission of Father's financial support records. In the alternative, Father claims the record made before the district magistrate judge lacked sufficient evidence for the district court judge to determine on the record the Father's parental rights should be terminated and the petition to adopt by Stepfather should be granted. Initially, the Father is concerned about how the district magistrate judge presided over the bench trial. Father claims the district court judge's only option on appeal from the district magistrate judge was to remand the case to the district magistrate judge for a new bench trial, and by not doing so, the district court judge erred. Both parties directed the district court judge to follow K.S.A. 2015 Supp. 20-302b(c)(2)(A) in processing the appeal. See K.S.A. 2015 Supp. 20-302b(c)(2)(A) (an appeal from a nonlaw trained district magistrate judge when a record was made shall be tried and determined by the district court judge de novo on the record).

Actually, appeals of Chapter 59 probate proceedings from a nonlaw trained district magistrate judge, are controlled by K.S.A. 2015 Supp. 59-2401a(a). If a record was made, an appeal of a nonlaw trained district magistrate judge shall be to the district court judge on the record. If either party appeals the district court judge's decision, then the appeal is to this court pursuant to Article 21 of Chapter 60 of the Kansas Statutes Annotated. See K.S.A. 2015 Supp. 59-2401a(b). We review the decision of the district court judge and not the decision of the district magistrate judge. The district court is free to make its decision on the merits of the plaintiff's or defendant's claim. See *In re L.C.W.*, 42 Kan. App. 2d 293, 298, 211 P.3d 829 (2009). Therefore, we look at the proceedings before the district court judge to determine if the district court judge used the proper standard to terminate Father's parental rights and to grant Stepfather's petition to adopt. Petitions to

adopt are governed by K.S.A. 59-2111 *et seq.*, and more specifically in a stepparent adoption, by K.S.A. 2015 Supp. 59-2136(d). Whether the district court judge used the proper standard is an issue of statutory construction. Interpretation of a statute is a question of law over which appellate courts have unlimited review. *Neighbor v. Westar Energy, Inc.*, 301 Kan. 916, 918, 349 P.3d 469 (2015). K.S.A. 2015 Supp. 59-2136(d) provides:

> "In a stepparent adoption, if a mother consents to the adoption of a child who has a presumed father . . . , the consent of such father must be given to the adoption *unless such father has failed or refused to assume the duties of a parent for two consecutive years next preceding the filing of the petition for adoption* or is incapable of giving such consent. In determining whether a father's consent is required under this subsection, the court may disregard incidental visitations, contacts, communications or contributions. In determining whether the father has failed or refused to assume the duties of a parent for two consecutive years next preceding the filing of the petition for adoption, there shall be a rebuttable presumption that if the father, after having knowledge of the child's birth, has knowingly failed to provide a substantial portion of the child support as required by judicial decree, when financially able to do so, for a period of two years next preceding the filing of the petition for adoption, then such father has failed or refused to assume the duties of a parent. The court may consider the best interests of the child and the fitness of the nonconsenting parent in determining whether a stepparent adoption should be granted." (Emphasis added.)

Father filed a notice of appeal to the district court judge and submitted a brief along with proposed findings of fact and conclusions of law. In his brief, Father asked the district court judge for a new trial. Father claimed the district court judge's jurisdiction to hear the appeal was found in K.S.A. 2015 Supp. 20-302b(c)(2)(A), which allows for a de novo review of a nonlaw trained district magistrate judge's decision on the record. Father asked the district court judge to review the issue de novo because the issue of whether the district magistrate judge used the correct legal standard was a pure legal question. Father claimed the district magistrate judge erred by citing K.S.A. 2015 Supp. 59-2136(h)(1)(B) as a basis for termination because the action was a stepparent adoption under K.S.A.

5

2015 Supp. 59-2136(d), which involves a different standard. Father also argued the district magistrate judge erred when it terminated his rights based only on unfitness because K.S.A. 2015 Supp. 59-2136(d) required a court first find he had failed to assume his parental duties for the 2 years preceding the filing of the petition for adoption before it could terminate his rights. Father claimed the district magistrate judge should have allowed into evidence the records of financial support he provided to show he was performing substantial parental duties within the 2-year window immediately before the petition was filed. Therefore, the case should be remanded to the district magistrate judge for a new bench trial to consider that evidence.

Father essentially asked the district court judge to review the record made by the district magistrate judge and make a legal conclusion regarding whether the district magistrate judge used the correct standard. Stepfather responded noting Father did not provide any authority supporting his contention the case should be remanded to the district magistrate judge for a new trial. Stepfather argued that under K.S.A. 2015 Supp. 20-302b(c)(2)(A), the district court judge should review the record de novo and make its own decision regarding the case.

The district court judge had access to the record, the briefs, and both parties' proposed findings of fact and conclusions of law when he reviewed the case. The court declined to remand the case to the district magistrate judge, finding it had authority under K.S.A. 2015 Supp. 20-302b(c)(2)(A) to try the case on the record made before the district magistrate judge. The district court judge went on to make his own findings of fact and conclusions of law based on the record before him:

> "The horrific facts of this case undoubtedly show [Father] is unfit. [Father] is facing 140 months of confinement for raping or performing sexual acts upon his two children (both of wh[o] were below 4 years of age at the time of the incidents), [D.G.G.] and [J.G.G.]. [Father], for obvious reasons, has not been a part of these two children's lives since July 2011.

6

"K.S.A. 59-2136(d) states in relevant part '. . . the consent of such father (the natural) must be given to the adoption unless such father has failed or refused to assume the duties of a parent for two consecutive years next preceding the filing of the petition for adoption[.]'

"Beyond the payment of support, fathers have multiple duties to their children. One of those duties is to protect them from horrendous acts and not to perpetuate horrendous acts upon them. [Father] raped and performed sex acts upon his two children. [Father] has utterly failed to perform the duties of a father for two consecutive years before the filing of the petition (raise them in a loving protective environment). Instead, he robbed them of their childhood. A few dollars of support provided before and after his conviction does not outweigh or compensate for his evil."

To support his argument the district court judge erred by not remanding the case to the district magistrate judge, Father points to K.S.A. 59-2409, which states: "Upon determination of an appeal from an order, judgment, decree, or decision of a district magistrate judge, the judge determining such appeal *may* remand the case to the district magistrate judge, who shall proceed in accordance therewith." (Emphasis added.)

Stepfather continues to argue that under K.S.A. 2015 Supp. 20-302b(c)(2)(A), the district court judge had the authority to review the record and make his own decision. Stepfather noted that even if the district magistrate judge had applied an erroneous legal standard, the district court judge had the authority to review and decide the case de novo based on the record made in the district magistrate court.

In relying upon K.S.A. 59-2409, Father neglects to recognize the term "may" in the statute, which denotes a discretionary decision on the part of the district court judge. Thus, the district court judge had three options: (1) Remand as provided in K.S.A. 59-2409; (2) decide the case on the record pursuant to K.S.A. 2015 Supp. 59-2401a(a); or (3) allow a de novo trial pursuant to K.S.A. 2015 Supp. 59-2401a(a). We review such a decision for an abuse of discretion. A judicial action constitutes an abuse of discretion if the action (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3)

is based on an error of fact. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106, *cert. denied* 134 S. Ct. 162 (2013). We see no abuse of discretion by the district court judge in exercising the option he followed to review the case on the record made before the district magistrate judge de novo pursuant to K.S.A. 2015 Supp. 20-302b(c)(2)(A). Both parties invited the district court judge to follow K.S.A. 2015 Supp. 20-302b(c)(2)(A) in handling the appeal, even though the proper statutory procedure for the appeal of a nonlaw trained district magistrate judge's decision in a probate case is provided by K.S.A. 2015 Supp. 59-2401a(a). In any event, neither party specifically challenges on appeal the district court judge's reliance on K.S.A. 2015 Supp. 20-302b(c)(2)(A) to process Father's appeal. An issue not briefed is deemed waived and abandoned. See *Superior Boiler Works, Inc. v. Kimball*, 292 Kan. 885, 889, 259 P.3d 676 (2011).

On appeal to this court, neither party recognized K.S.A. 2015 Supp. 59-2401a(a)'s application to this case. Father does claim the district court judge erred by not remanding the case to the district magistrate judge pursuant to K.S.A. 59-2409, while Stepfather argues the district court judge correctly utilized K.S.A. 2015 Supp. 20-302b(c)(2)(A). The statutory instruction contained in K.S.A. 2015 Supp. 20-302b(c)(2)(A) and K.S.A. 2015 Supp. 59-2401a(a) are very similar, and while we recognize K.S.A. 2015 Supp. 59-2041a(a) is the more specific statute and controls over K.S.A. 2015 Supp. 20-302b(c)(2)(A), when we construe them in pari materia with each other, we find no error by the district court other than the wrong statute was relied upon by the district court judge to process the appeal from the district magistrate judge. This error was harmless. See *State v. Overman*, 301 Kan. 704, 712, 348 P.3d 516 (2015).

Since we have determined the district court judge was right for the wrong reason, we now look at K.S.A. 2015 Supp. 59-2401a(a) to review the district court judge's function in handling the appeal:

"The appeal shall be heard no later than 30 days from the date the notice of appeal is filed. If no record was made of the proceedings, the trial shall be de novo. Except as provided further, if a record was made of the proceedings, the district judge shall conduct the appeal on the record. Upon motion of any party to the proceedings, the district judge *may* hold a trial de novo." (Emphasis added.)

The statute provides the district court judge discretion to hold the trial de novo if any party asks for a de novo trial. Father asked for a new trial but neither party specifically asked for a de novo trial. They both requested the district court judge utilize K.S.A. 2015 Supp. 20-302b(c)(2)(A) in processing the appeal, which does provide for a de novo review on the record by the district court judge. The district court judge proceeded with a de novo review based on the record made before the district magistrate judge, supplemented with both parties briefs, proposed findings of fact, and conclusions of law.

With a de novo review, the district court is free to review and decide the case based on the record created before the district magistrate judge. This outcome also makes the most sense in this case. Here, the district magistrate judge may have relied in part on the wrong statute to grant the adoption, but that makes no difference to this court as we review the decision of the district court judge, not the district magistrate judge. Our standard of review is the totality of the circumstances involving the father and his minor children. The Kansas Supreme Court, in interpreting a prior year's version of K.S.A. 2015 Supp. 59-2136(d), held that a court should consider the totality of circumstances when deciding whether a Father failed to assume his parental duties. See *In re Adoption of J.M.D.*, 293 Kan. 153, 167, 260 P.3d 1196 (2011).

The district court judge, in reviewing the record, found he could decide the appeal without remanding the case. The district court judge reviewed the record and, applying the clear and convincing evidence standard, determined Father had failed to assume his parental duties for the 2 years preceding the filing of the petition and was unfit because of

9

his past horrendous acts; therefore, his parental rights were terminated and the adoption was granted. The district court judge also addressed the district magistrate judge's exclusion of Father's child support payments by stating: "A few dollars of support provided before and after his conviction does not outweigh or compensate for his evil."

In conclusion, the district court judge did not err when he determined the record was sufficient for him to rule on Stepfather's petition to terminate Father's parental rights and to adopt the two minor children. The district court applied the correct statutory standard to the evidence contained in the record on appeal from the district magistrate judge's bench trial.

*Substantial Competent Evidence*

Father contends the district court judge's decision to terminate his parental rights based on the fact he was unfit and failed to assume parental duties for the 2 years immediately preceding the filing of the petition for stepparent adoption is not supported by sufficient evidence.

A district court's finding under K.S.A. 2015 Supp. 59-2136(d) that a parent has refused or failed to assume parental duties for 2 years prior to the filing of the petition for stepparent adoption is a finding of fact that we review in the light most favorable to the prevailing party below to determine if it is supported by substantial competent evidence. *In re Adoption of J.M.D.*, 293 Kan. at 171. Substantial competent evidence is such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion. *Gannon v. State*, 298 Kan. 1107, 1175, 319 P.3d 1196 (2014).

The Kansas Supreme Court set forth the analysis courts must consider when deciding whether to terminate a father's rights under K.S.A. 2015 Supp. 59-2136(d). See *In re Adoption of J.M.D.*, 293 Kan. at 167-68. The court abandoned the "two-sided

10

ledger" test used in prior cases involving stepparent adoptions in favor of a totality of the circumstances approach. 293 Kan. at 167. The two-sided ledger test required courts to consider both love and affection and any financial support provided to determine whether parental duties had been met. Under the test, the parent must have failed both sides of the ledger before a court could terminate his parental rights. 293 Kan. at 164. Citing its rationale from *In re Adoption of G.L.V.*, 286 Kan. 1034, 1053-54, 190 P.3d 245 (2008), the Supreme Court found the two-sided ledger test was not the most comprehensive analysis to use because "'there are numerous duties associated with being a parent to a child, and all such duties—even though not explicitly enumerated—may be considered,'" and abandoned the two-sided test and adopted a totality of circumstances analysis in its place. *In re Adoption of J.M.D.*, 293 Kan. at 167. The court noted the statute contained a rebuttable presumption that a father fails to assume parental duties if he fails to financially support the child when able to do so and a court did not have to consider the totality of circumstances if that presumption applied. 293 Kan. at 167. The court mentioned that even if the presumption did not apply, a court may still consider the lack of financial support as part of the totality of circumstances. 293 Kan. at 167. Most importantly, however, the court found that although the statute allowed for a court to consider the nonconsenting parent's fitness,

> "a natural parent's unfitness will not obviate the need for his or her consent to a stepparent adoption, unless the district court finds that the unfitness has prevented the natural parent from assuming the duties of a parent for 2 consecutive years next preceding the filing of the petition for adoption." 293 Kan. at 169.

The court noted, for example, even if a father was communicating with his children on a regular basis, if that communication was psychologically or emotionally abusive to the children, a court could find the father failed to assume parental duties by not "safeguarding his children's physical, mental, or emotional health." 293 Kan. at 169-70.

11

Here, Father claims the district court judge's finding that he failed to assume his parental duties is not supported by sufficient evidence and contrary evidence in the record exists to show he did assume his parental duties. Father's claims are based mainly on the "substantial" child support he paid before he was incarcerated. Father believes the district court judge should have considered the child support he paid as part of the totality of circumstances. Father also argues there was no evidence at trial connecting his unfit behavior (the molestation of his own children) to the children's emotional health during the relevant 2-year time frame. Father is essentially arguing that because the molestation happened outside the 2-year statutory time frame, there was insufficient evidence to show his unfitness caused him to fail to assume his parental duties in the 2 years prior to the filing of the stepparent adoption petition. He claims he attempted to contact his children during the relevant 2-year time frame but was prevented from doing so by both Mother and the no-contact order in place after divorce proceedings were instigated by his wife.

Father's arguments lack merit. The district court judge considered the totality of circumstances and found that Father had failed to assume his parental duties for the 2 years immediately before Stepfather's petition was filed and his extended absence in the children's lives was due to his intentional conduct that resulted in his imprisonment for his molestation of them. Additionally, the district court judge found Father failed to honor his parental duty to protect his children from horrendous acts but instead intentionally perpetuated horrendous acts upon them and "robbed [the children] of their childhood." Finally, the district court judge acknowledged fathers have "multiple duties to their children" over and above the payment of child support. Here, the district court found "a few dollars of support provided before and after [Father's] conviction does not outweigh or compensate for his evil."

The district court judge's decision is supported by substantial competent evidence. First, unless a stepparent is invoking the rebuttable presumption that a father failed to assume his parental duties by not paying child support, it is but one point for the court to

12

consider with all the other factors in the children's best interests. A court is supposed to weigh the totality of circumstances. Here, the district court judge took into account Father had paid child support, but the judge found the overwhelming evidence that Father had sexually molested and raped his children was not outweighed by any amount of money.

Further, it is illogical to find Father's unfit behavior (the molestation) did not amount to him failing to assume his parental duties simply because the molestation happened outside the 2-year window. When the molestation was discovered, Father was no longer allowed contact with the children. He inflicted serious harm on his children by raping and molesting them. Father has been absent from his children's lives since July 2011 due to his intentional acts. Finally, the record reflects Father is currently serving a 140-month term of imprisonment and will not be in a position to parent his children anytime in the near future. In a light most favorable to the Stepfather, there is substantial competent evidence to support the district court judge's decision Father was unfit, to terminate Father's parental rights, and to grant the Stepfather's adoption of the children pursuant to K.S.A. 2015 Supp. 59-2136(d).

Affirmed.