NOT DESIGNATED FOR PUBLICATION

No. 116,213

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CITY OF TOPEKA,
*Appellee*,

v.

WILLIE L. MURDOCK,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; C. WILLIAM OSSMANN, judge. Opinion filed January 12, 2018. Affirmed.

*Alex L. Moorhead*, legal intern, *Eric A. Lindstrom*, legal intern, *John C. Grobmyer*, legal intern, and *John J. Francis*, supervising attorney, of Washburn Law Clinic, for appellant.

*Paige A. Blevins*, assistant city attorney, for appellee.

Before STANDRIDGE, P.J., PIERRON, J., and BURGESS, S.J.

PER CURIAM: Willie L. Murdock appeals from his conviction of possession of drug paraphernalia under Topeka Municipal Code. 9.50.040(a)(2). He argues (1) the district court erred when it denied his motion to suppress because he did not give Officer Matthew Blassingame consent to enter his apartment; (2) the court erred when it denied his motion to suppress because the plain view doctrine was not satisfied; (3) the court erred in the interpretation of Topeka Municipal Code 9.50.040(a)(2); and (4) there was insufficient evidence presented at trial to find him guilty of possession of drug paraphernalia under Topeka Municipal Code 9.50.040(a)(2). Finding no error, we affirm.

1

Murdock filed a motion to suppress physical evidence and statement evidence on April 11, 2016. He argued the glass pipe and alleged marijuana found in his apartment as well as the statements he made to Officer Blassingame should be suppressed because they were obtained as a result of an illegal search and seizure and the statement was obtained in violation of *Miranda*.

A hearing was held on the motion in municipal court on May 4, 2016. Officer Blassingame testified he was assigned to the community policing unit and specifically he was the liaison officer to the Topeka Housing Authority. On October 5, 2015, he was doing foot patrol through Jackson Towers. Blassingame had received a complaint that Jacqueline Taylor, who was banned from the building, was frequenting Murdock's apartment.

Officer Blassingame did a walkthrough of the building and then made contact at Murdock's apartment, number 610. At the time, the officer was wearing a body camera and it was recording. He knocked on the door and stood to the side for his safety when he knocked. Murdock asked who it was and Blassingame responded it was the housing authority. Murdock opened the door and indicated Blassingame could not enter. Blassingame indicated he wanted to speak with Murdock regarding personal business and asked Murdock if he could step in and talk. At that point, Murdock allowed him to come in.

Murdock made it clear to Officer Blassingame that he could not search his apartment. Blassingame testified that from where he was standing in the entryway and kitchen area, he was able to see drug paraphernalia. It appeared to be a methamphetamine pipe. Blassingame said he was still in the apartment legally when he observed the methamphetamine pipe in plain view in an ashtray on a table.

2

Officer Blassingame testified the pipe was glass, shaped like a stem with a bulbous end, and had residue on the inside. He stated that in his training and experience it was clearly drug paraphernalia. He further said the bulbous end had the opening where a person could put drugs inside and then heat up the bottom. As the smoke comes off the drug, the person could inhale it from the stem end. The pipe had burn marks and residue across it which was indicative of drug paraphernalia.

At the end of the hearing, the municipal court found that Officer Blassingame was lawfully in Murdock's apartment and he had been given permission to enter the apartment and speak with Murdock. The court further found Blassingame was not there for the purpose of conducting a search and he had seen the pipe in plain view. Therefore, the pipe was admissible. The court further found the statements were also admissible.

Murdock appealed to the district court and a trial was held on June 20, 2016. Officer Blassingame testified he smelled the odor of burnt marijuana when he stepped into the apartment. He stated his training and experience indicated the pipe was a methamphetamine or crack pipe. Blassingame stated he gave Murdock a citation for possession of drug paraphernalia due to the glass pipe that was found in his apartment.

The video from the body camera was included in the record. We have reviewed the video. The following information is from the video.

Officer Blassingame knocked on Murdock's door and Murdock can be heard saying, "Who is it?" Blassingame identified himself as housing authority and Murdock opened the door. Blassingame asked Murdock if he was "Willie" and if he could come in. Murdock walked to the outside of the door and left it cracked open.

Officer Blassingame asked Murdock if he was the only one in the apartment and Murdock said, "Yes." Blassingame asked if he could come into the apartment and talk

3

with him and Murdock slightly shook his head back and forth, indicating, "No," and asked "Why?" Blassingame stated he needed to talk with Murdock about personal business and he would rather not do it in the hallway. Murdock then said either "Well, come on," or "Well, come in," and stepped backed into the apartment and gave a slight wave. Blassingame did not step forward into the apartment until he saw this response from Murdock.

Officer Blassingame walked into the apartment and Murdock closed the door behind him. Murdock asked what this was about and Blassingame told him he had received a complaint that Taylor had been hanging out at his apartment. Murdock shook his head and Blassingame asked if Murdock would mind if he looked around to see that Taylor was not there. Murdock said that he did mind. Blassingame told Murdock he was a liaison for the Topeka Housing Authority, Taylor was banned from the property, and Murdock would be in violation of his lease if he allowed Taylor to stay with him.

Officer Blassingame then asked Murdock if he had been smoking anything other than marijuana in his apartment. Blassingame turned to face the living room. A pillar was between where he was standing and the living room, but he could see the edge of the coffee table. Blassingame stated, "That looks like you got a meth pipe in your ashtray right there." Murdock said if he had not let Blassingame in he would not have seen the pipe. Blassingame replied that he appreciated that Murdock let him inside the apartment.

During the interaction, the video does not show Blassingame move around inside the apartment during the above conversation. He stayed in the same spot and saw the pipe on the coffee table from where he was standing from the entryway and kitchen area.

The district court found it was satisfied beyond a reasonable doubt that Murdock had committed the offense under Topeka Municipal Code 9.50.040. Murdock appeals.

4

On appeal, Murdock first argues he did not give consent for Blassingame to enter his apartment, and the district court erred when it denied his motion to suppress.

The standard of review of a district court's decision on a motion to suppress applies a bifurcated standard. The appellate court reviews the district court's factual findings to determine whether they are supported by substantial competent evidence. The ultimate legal conclusion is reviewed using a de novo standard. In reviewing the factual findings, the appellate court does not reweigh the evidence or assess the credibility of witnesses. *State v. Patterson*, 304 Kan. 272, 274, 371 P.3d 893 (2016).

"[A] warrantless entry into a private dwelling by law enforcement officers is considered unreasonable and invalid unless it falls within a recognized exception to the warrant requirement." *State v. Neighbors*, 299 Kan. 234, 239, 328 P.3d 1081 (2014). The State carries the burden to prove that a search was lawful. *State v. Overman*, 301 Kan. 704, 710, 348 P.3d 516 (2015). Evidence obtained from an unreasonable search may be excluded. *State v. Daniel*, 291 Kan. 490, 496, 242 P.3d 1186 (2010).

Various exceptions exist to the warrant requirement in Kansas. *Neighbors*, 299 Kan. at 239. Among these exceptions is consent. 299 Kan. at 239. In order for consent to be valid, there must be clear testimony that consent was "unequivocal, specific, and freely given," and it must be given "without duress or coercion, express or implied." *State v. Richard*, 300 Kan. 715, 729, 333 P.3d 179 (2014).

The body camera video shows that when Officer Blassingame was in the hallway and told Murdock he needed to speak with him about personal business, Murdock either said, "Well, come on," or "Well, come in." After viewing this portion of the video, it is clear Murdock said one of these statements. Either of these statements would fall under valid consent, as they were specific and freely given and Murdock was not under any duress or coercion. See 300 Kan. at 729. While there was no testimony from Blassingame

5

that Murdock made either of the statements to him, the video clearly demonstrates Murdock was saying one of the above statements.

Nonverbal conduct can also constitute consent to enter an individual's home. *State v. Seeley*, No. 99,456, 2009 WL 500960, at *4 (Kan. App. 2009) (unpublished opinion). The *Seeley* court stated that "a nod of the head can be unequivocal and specific." 2009 WL 500960, at *4. Further, the 10th Circuit stated:  "Non-verbal conduct, considered with other factors, can constitute voluntary consent to search." *United States v. Gordon*, 173 F.3d 761, 766 (1999).

Here, Officer Blassingame testified that when he indicated to Murdock that he wanted to speak with him about personal business and asked if he could step inside to talk, Murdock allowed him to come inside his apartment. From the video, it can be seen that after Murdock says either "Well, come on," or "Well, come in," he stepped back into the apartment, pushed the door open wider, and gave a slight wave. Upon seeing this response from Murdock, Blassingame walked into the apartment and Murdock closed the door behind him. If a nod of the head can be unequivocal and specific, so can a wave paired with opening the door wider and stepping backwards. See *Seeley*, 2009 WL 500960, at *4. When the language used by Murdock is added to his nonverbal conduct, it is clear that he gave valid, freely given consent. The district court did not err when it denied Murdock's motion to suppress.

Murdock also argues Officer Blassingame's discovery of evidence was illegal and was not supported by the plain view doctrine. He argues the district court erred when it denied his motion to suppress on this issue.

As stated above, the standard of review of a district court's decision on a motion to suppress applies a bifurcated standard. The appellate court reviews the district court's factual findings to determine whether they are supported by substantial competent

6

evidence. The ultimate legal conclusion is reviewed using a de novo standard. In reviewing the factual findings, the appellate court does not reweigh the evidence or assess the credibility of witnesses. *Patterson*, 304 Kan. at 274.

Another recognized exception to the warrant requirement is the plain view doctrine. *Neighbors*, 299 Kan. at 239. Under this doctrine, if a police officer is lawfully in a position from where he or she views an object that is immediately apparent to be incriminating in character, he or she may seize it without a warrant if the officer has a lawful right of access to the object. *State v. Payne*, 273 Kan. 466, 476, 44 P.3d 419 (2002). Therefore, the plain view doctrine requires that (1) an officer must be in a lawful position to view the object; (2) the incriminating character of the object must be immediately apparent; and (3) the officer must have a lawful right of access to the object. *State v. Miles*, No. 114,544, 2017 WL 383790, at *10 (Kan. App. 2017) (unpublished opinion).

Officer Blassingame was lawfully in Murdock's apartment due to Murdock's valid consent. The first requirement of the plain view doctrine, that the officer must be in a lawful position to view the object, has been met. See 2017 WL 383790, at *10. The third requirement of the plain view doctrine has also also met, as Blassingame had a lawful right of access to the object because it was in plain view from where he stood— lawfully—inside Murdock's kitchen and entryway area. See 2017 WL 383790, at *10.

Officer Blassingame testified that when he spoke to Murdock inside the apartment, Murdock made it clear he could not search the apartment. However, from where Blassingame was standing in the entryway and kitchen area, he could see paraphernalia in the living room that was clearly a methamphetamine pipe. Blassingame testified the pipe was glass, shaped like a stem with a bulbous end, and had residue on the inside. He stated from his training and experience it was clearly drug paraphernalia. Based on Blassingame's testimony, the incriminating character of the pipe was immediately

apparent, and the second requirement of the plain view doctrine has been met. See *Miles*, 2017 WL 383790, at \*10.

The plain view doctrine requirements were all met in this case. The district court did not err when it denied Murdock's motion to suppress.

Murdock next argues the district court erred in its interpretation of Topeka Municipal Code 9.50.040(a)(2).

Interpretation of a statute is a question of law over which appellate courts have unlimited review. *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015). The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. *State v. Jordan,* 303 Kan. 1017, 1019, 370 P.3d 417 (2016). An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. *State v. Barlow*, 303 Kan. 804, 813, 368 P.3d 331 (2016).

When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. 303 Kan. at 813. Where there is no ambiguity, the court need not resort to statutory construction. Only if the statute's language or text is unclear or ambiguous does the court use canons of construction or legislative history to construe the legislature's intent. 303 Kan. at 813.

Topeka Municipal Code 9.50.040(a)(2) states, "(a) It shall be unlawful for any person to use or possess with intent to use: . . . . (2) Any drug paraphernalia to use, store, contain, conceal, inject, ingest, inhale or otherwise introduce into the human body a controlled substance in violation of the Uniform Controlled Substances Act."

8

Murdock argues the district court incorrectly framed the question and stated in its ruling that the standard for drug paraphernalia was whether an item could be used to store, contain, conceal, inject, ingest, inhale or otherwise introduce into the human body a controlled substance. Murdock states the correct standard is whether the item had been used or possessed with intent to use—not could be used.

During this proceeding, there were several questions asked of Officer Blassingame regarding the odor of methamphetamine and whether he smelled it in Murdock's apartment. Defense counsel emphasized the common use for that pipe was methamphetamine and not marijuana. However, Blassingame was asked if the pipe could be used to smoke marijuana, to which he stated "Yes."

During closing argument, defense counsel indicated there was no evidence the pipe belonged to Murdock and that there was no intent to use the pipe. The argument presented by defense counsel revolved around whether the pipe was drug paraphernalia and whether the pipe had been used to smoke methamphetamine.

In its findings, the district court stated the hearing had been sidetracked regarding the smell of marijuana in the apartment. It stated the issue under the municipal code did not revolve around whether the pipe was used for crack, or methamphetamine, or marijuana, "but that it could be used to ingest those."

The district court did not use the wrong standard under Topeka Municipal Code 9.50.040(a)(2). Based on the arguments at the hearing, the court made this statement to clear up the fact that the pipe did not have to actually be used to smoke an illegal substance, just that it could be used to ingest an illegal substance. The plain language of the statute does not require a defendant to actually use the drug paraphernalia to ingest an illegal substance. It only requires that the defendant use *or* possess with the intent to use the paraphernalia for illegal substances. Topeka Municipal Code 9.50.040(a)(2).

Therefore, the district court did not err in its interpretation of Topeka Municipal Code. 9.50.040(a)(2).

Murdock finally argues the City of Topeka (City) failed to present sufficient evidence to prove beyond a reasonable doubt that the glass pipe was used or possessed with intent to use a controlled substance.

"'When the sufficiency of evidence is challenged in a criminal case, this court reviews the evidence in a light most favorable to the State to determine whether a rational fact finder could have found the defendant guilty beyond a reasonable doubt.' [Citation omitted.]" *State v. Rosa*, 304 Kan. 429, 432-33, 371 P.3d 915 (2016). "'In making a sufficiency determination, the appellate court does not reweigh evidence, resolve evidentiary conflicts, or make determinations regarding witness credibility.' [Citations omitted.]" *State v. Dunn*, 304 Kan. 773, 822, 375 P.3d 332 (2016). It is only in rare cases where the testimony is so incredible that no reasonable fact-finder could find guilt beyond a reasonable doubt that a guilty verdict will be reversed. *State v. Matlock*, 233 Kan. 1, 5-6, 660 P.2d 945 (1983).

Under Topeka Municipal Code 9.50.060, K.S.A. 2016 Supp. 21-5711 shall be considered in determining whether an object is drug paraphernalia. This statute states:

> "(a) In determining whether an object is drug paraphernalia, a court or other authority shall consider, in addition to all other logically relevant factors, the following:
> (1) Statements by an owner or person in control of the object concerning its use;
> (2) prior convictions, if any, of an owner or person in control of the object, under any state or federal law relating to any controlled substance;
> (3) the proximity of the object, in time and space, to a direct violation of K.S.A. 2016 Supp. 21-5701 through 21-5717, and amendments thereto;
> (4) the proximity of the object to controlled substances;
> (5) the existence of any residue of controlled substances on the object;

(6) direct or circumstantial evidence of the intent of an owner or person in control of the object to deliver it to a person the owner or person in control of the object knows or should reasonably know, intends to use the object to facilitate a violation of K.S.A. 2016 Supp. 21-5701 and 21-5717, and amendments thereto. The innocence of an owner of person in control of the object as to a direct violation of K.S.A. 2016 Supp. 21-5701 through 21-5717, and amendments thereto, shall not prevent a finding that the object is intended for use as drug paraphernalia;

(7) oral or written instructions provided with the object concerning its use;

(8) descriptive materials accompanying the object which explain or depict its use;

(9) national and local advertising concerning the object's use;

(10) the manner in which the object is displayed for sale;

(11) whether the owner or person in control of the object is a legitimate supplier of similar or related items to the community, such as a distributer or dealer of tobacco products;

(12) direct or circumstantial evidence of the ratio of sales to the object or objects to the total sales of the business enterprise;

(13) the existence and scope of legitimate uses for the object in the community;

(14) expert testimony concerning the object's use;

(15) any evidence that alleged paraphernalia can or has been used to store a controlled substance or to introduce a controlled substance into the human body as opposed to any legitimate use for the alleged paraphernalia; or

(16) advertising of the item in magazines or other means which specifically glorify, encourage or espouse the illegal use, manufacture, distribution or cultivation of controlled substances."

Murdock argues the City only provided evidence for 1 of the 16 factors listed above. He states the evidence was testimony from Officer Blassingame that fell into the catchall factor, K.S.A. 2016 Supp. 21-5711(a)(15).

At trial, Officer Blassingame testified he was able to identify the pipe as drug paraphernalia from where he stood at the entryway of Murdock's apartment. He identified the pipe as having a bulbous end where a person can put drugs inside and then heat up the bottom. As the smoke comes off the drug, the person inhales it out of the other end.

11

Blassingame also testified the pipe in Murdock's apartment had clear burn marks and residue across it.

Based on the evidence provided by Officer Blassingame, the prosecution presented at least three factors listed in K.S.A. 2016 Supp. 21-5711(a). First, under K.S.A. 2016 Supp. 21-5711(a)(5), the existence of any residue of controlled substances on the object—Blassingame stated there was residue across the pipe. Next, under K.S.A. 2016 Supp. 21-5711(a)(13), the existence and scope of legitimate uses for the object in the community—Blassingame testified in his training and experience it was clearly drug paraphernalia used for methamphetamine. Lastly, under K.S.A. 2016 Supp. 21-5711(a)(15), any evidence the paraphernalia can or has been used to store a controlled substance or introduce a controlled substance into the human body—Blassingame testified the bulbous end of the pipe is where a person puts the drugs inside, heats up the bottom, and smoke comes off for the person to inhale.

Based on all of the evidence presented at trial that falls under factors of K.S.A. 2016 Supp. 21-5711(a), it is clear a rational fact-finder could determine Murdock was guilty beyond a reasonable doubt.

Affirmed.

12