Nos. 98,118
98,119

STATE OF KANSAS, *Appellant*, v. RANDY L. HENNING, *Appellee*,
and KELLY K. ZABRISKIE, *Appellee*.

(209 P.3d 711)

Opinion filed June 26, 2009.

*Timothy L. Dupree*, assistant county attorney, argued the cause, and *Marc Goodman*, county attorney, and *Paul J. Morrison*, attorney general, were with him on the briefs for appellant.

*Don W. Lill*, of Emporia, argued the cause and was on the brief for appellee Randy L. Henning.

*Monte L. Miller*, of Monte L. Miller, Chtd., of Emporia, argued the cause and was on the briefs for appellee Kelly K. Zabriskie.

The opinion of the court was delivered by

BEIER, J.: These consolidated appeals focus on the meaning and constitutionality of K.S.A. 22-2501(c), a part of the Kansas statute on searches incident to arrest. We hold that the United States Supreme Court's recent decision in *Arizona v. Gant*, 556 U.S. 332, 173 L. Ed. 2d 485, 129 S. Ct. 1710 (2009), controls in this case and that it compels us to strike down K.S.A. 22-2501(c) as unconstitutional.

## Factual and Procedural Background

There is no material dispute on the relevant facts.

Defendant Randy Henning came to the attention of Deputy Sheriff Patrick F. Stevenson when they crossed paths one morning at an Emporia convenience store. Stevenson believed that there was an outstanding warrant for Henning's arrest and radioed a dispatcher. When the dispatcher confirmed the existence of a warrant, Stevenson left the store and asked Henning to step out of the passenger side of the car he had just entered. Defendant Kelly

Zabriskie was sitting in the driver's seat. Once Stevenson confirmed Henning's identity, he arrested and handcuffed him.

Stevenson then searched the car while Henning stood on a sidewalk 5 feet to 7 feet from the front of the car. Zabriskie stood beside Henning during the search. Stevenson determined that the car was registered to Henning but insured by Zabriskie. In the car's closed center console, Stevenson found a flashlight case. Inside the case, he discovered a clear glass pipe, a syringe, and two Q-tips. The clear glass pipe appeared to contain drug residue; the residue was later tested and identified as amphetamine. After finding this evidence, Stevenson placed Zabriskie under arrest for possession of drug paraphernalia.

Defendants moved to suppress. On hearing, Stevenson testified that he searched the car "[b]ecause the Kansas statute had changed to be able to search for items after an arrest, fruits of a crime, and that law had taken [effect] July 1st. [T]his was July 6th and . . . [Henning] had been in that vehicle and the law also stated that I could search the vehicle where I made an arrest out of."

Stevenson was referring to a one-word change made in K.S.A. 22-2501(c) by the 2006 legislature. Since 1970, when the statute was enacted, it had provided:

"When a lawful arrest is effected a law enforcement officer may reasonably search the person arrested and the area within such person's immediate presence for the purpose of
(a) Protecting the officer from attacks;
(b) Preventing the person from escaping; or
(c) Discovering the fruits, instrumentalities, or evidence of *the* crime." (Emphasis added.)

During the 2006 legislative session, the statute was first repealed and then revived with a change that took effect on July 1, 2006. The new subsection (c) has since read: "Discovering the fruits, instrumentalities, or evidence of *a* crime." (Emphasis added.)

Stevenson's testimony also made clear that, at the time he searched defendants' car, he had no expectation that he would find evidence of any particular crime committed by any particular person:

"Q: [Zabriskie's attorney] So what crime were you looking for fruits of[,] evidence of?"
"A: [Stevenson] Of any crime.
"Q: None in particular just a crime, any crime?
"A: I recall being trained that on the 1st, July, 2006 the Kansas statute changed to be able to fruit -to search for fruits of a crime.
"Q: A crime and I'm asking you what crime in particular were you searching.
"A: I don't know until I find it, sir."

In each of the defendants' cases, the district judge held that Stevenson's search was unconstitutional. Our Court of Appeals consolidated the State's appeals in the two cases and then reversed and remanded. We granted defendants' petition for review.

We address two questions in the following order: (1) What was the significance of the legislature's 2006 change of "the" to "a" in subsection (c) of the statute? and (2) Is the current statute constitutional?

### Replacement of "The" with "A"

The appellate standard of review for a question of statutory interpretation or construction is unlimited. See *State v. Storey*, 286 Kan. 7, 9-10, 179 P.3d 1137 (2008). Our most fundamental guideline is that the intent of the legislature governs if that intent can be ascertained. See *Winnebago Tribe of Nebraska v. Kline*, 283 Kan. 64, 77, 150 P.3d 892 (2007). Thus, our first task is to discern "the legislature's intent through the statutory language it employs, giving ordinary words their ordinary meaning." *State v. Stallings*, 284 Kan. 741, 742, 163 P.3d 1232 (2007).

"When a statute is plain and unambiguous, we do not speculate as to the legislative intent behind it and will not read the statute to add something not readily found in it. We need not resort to statutory construction. It is only if the statute's language or text is unclear or ambiguous that we move to the next analytical step, applying canons of construction or relying on legislative history construing the statute to effect the legislature's intent." *In re K.M.H.*, 285 Kan. 53, 79, 169 P.3d 1025 (2007).

See *State ex rel. Morrison v. Oshman Sporting Goods Co. Kansas*, 275 Kan. 763, 769, 69 P.3d 1087 (2003).

As a general rule, criminal statutes must be strictly construed in favor of the accused. Nevertheless, this rule of strict construction

is subordinate to the rule that judicial interpretation must be reasonable and sensible to effect legislative design and intent. *State v. Paul*, 285 Kan. 658, 662, 175 P.3d 840 (2008). When the legislature has revised an existing law, we presume that a change in meaning was intended. *State v. McElroy*, 281 Kan. 256, 263, 130 P.3d 100 (2006).

"A" is often referred to as an indefinite article, while "the" is denominated a definite article. See Garner's Modern American Usage 1, 785 (2nd ed. 2003). The word "a" is "used as a function word before singular nouns when the referent is unspecified." Merriam Webster's Collegiate Dictionary 1 (11th ed. 2003). "A" can also mean "any." Merriam Webster's Collegiate Dictionary 1. "The" is "used as a function word to indicate that a following noun or noun equivalent is definite or has been previously specified by context or by circumstance." Merriam Webster's Collegiate Dictionary 1294.

In *State v. Anderson*, 259 Kan. 16, 910 P.2d 180 (1996), this court examined a vehicle search incident to arrest and explicitly considered the specificity denoted by the use of "the" in the earlier version of K.S.A. 22-2501(c).

In *Anderson*, a police officer took the driver of a car into custody after a traffic stop and license check turned up an arrest warrant. The driver was handcuffed and situated in the back seat of the officer's car; a front-seat passenger was asked to step out. The officer then searched the car, uncovering drug evidence. The passenger was then arrested. *Anderson*, 259 Kan. at 17-18.

Writing for a unanimous court, then Chief Justice Kay McFarland first observed: "The search of the vehicle was *purely and solely* a search incident to arrest. There is no evidence of or claim made that probable cause was present for the search." *Anderson*, 259 Kan. at 19. Chief Justice McFarland then reviewed the language of K.S.A. 22-2501 and addressed the State's argument that the statute had been intended to codify federal law enunciated in *Chimel v. California*, 395 U.S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034, *reh. denied* 396 U.S. 869 (1969), and should be read as coextensive with the later United States Supreme Court ruling in

*New York v. Belton,* 453 U.S. 454, 69 L. Ed. 2d 768, 101 S. Ct. 2860, *reh. denied* 453 U.S. 950 (1981).

In *Chimel,* the Court had held that a search of an arrestee's entire house could not be justified under the Fourth Amendment; "[t]he search here went far beyond [defendant's] person and the area from within which he might have obtained either a weapon or something that could have been used as evidence against him. There was no constitutional justification, in the absence of a search warrant, for extending the search beyond that area." *Chimel,* 395 U.S. at 768.

In *Belton,* the search at issue was conducted in the passenger compartment of a car after four occupants were removed from the car, placed under arrest, searched, and separated from each other. Drug evidence was found in the defendant's jacket on the back seat. In that case, the Court held that the scope of a constitutional search incident to arrest was broad enough to include the interior of the car. *Belton,* 453 U.S. at 460. As Chief Justice McFarland noted in *Anderson,* the *Belton* decision also expressly denied that its holding altered " 'the fundamental principles established in the *Chimel* case regarding the basic scope of searches incident to lawful custodial arrests.' *Belton,* 453 U.S. at 460 n.3." 259 Kan. at 22.

With *Chimel* and *Belton* as backdrop, Chief Justice McFarland then concluded that the original language of K.S.A. 22-2501(c), *i.e.,* which used "the" rather than "a," may "be more restrictive than prevailing case law on the Fourth Amendment would permit, but this does not alter the plain language of the statute." *Anderson,* 259 Kan. at 22.

"*Belton* may expand the scope of the constitutionally permissible search of a vehicle but not the permissible purpose of the search. . . .

. . . .

". . . The statute sets out three purposes for which . . . searches [incident to arrest] may be made, and a search wholly under the statute must be for one of the purposes set forth therein. By the searching officer's own testimony, none of the three statutory purposes was his purpose in conducting the search." 259 Kan. at 23-24.

*Anderson* thus held that K.S.A. 22-2501(c) permitted a law enforcement officer to search a car or truck incident to an occupant's

or a recent occupant's arrest for the purpose of uncovering evidence to support *only* the crime of arrest. 259 Kan. at 23. That case, like this one, arose from a vehicle search incident to arrest, but the core of the ruling would apply whenever a search of any space incident to arrest has been justified solely on the basis of subsection (c) of K.S.A. 22-2501; it would have to be limited to the purpose of uncovering evidence of *the* crime of arrest.

Both the legal presumption that arises from the fact that our legislature traded "the" for "a" in subsection (c) of K.S.A. 22-2501 and the distinctions in the definitions and usage of "a" and "the" demonstrate that some sort of change was intended in 2006. But that is as far as "the plain language" of the current statute will take us. The ordinary meaning of the very ordinary "a" can indicate "a particular" person, place, or thing, albeit one not previously mentioned, or it can indicate "any" person, place, or thing. This duality leads us to conclude that the current text of the statute is ambiguous, requiring consultation of legislative history, employment of canons of construction, and review of other background considerations to divine the meaning of the text. In short, we must move from statutory interpretation to construction. See *State v. Paul*, 285 Kan. 658.

K.S.A. 22-2501(c)'s legislative history demonstrates that the 2006 change from "the" to "a" may have been, at least in part, responsive to our holding 10 years earlier in *Anderson*.

The legislature first looked at amending K.S.A. 22-2501 in 2004, when it considered H.B. 2541. House J. 2004, p. 967. The House Corrections and Juvenile Justice Committee heard testimony from Kyle G. Smith, Director of Public and Governmental Affairs for the Kansas Bureau of Investigation. Smith opined that K.S.A. 22-2501(c), as interpreted in *Anderson*, limited officers' search capabilities and led to confusion. He urged legislators to change "the" in subsection (c) of the statute to "a," arguing that *Belton* established that no arrestee's constitutional rights would be infringed by such a change in the wording or in law enforcement practice. Minutes, House Corrections and Juvenile Justice Comm., February 2, 2004. Randall L. Hodgkinson, Deputy Appellate Defender, also testified on H.B. 2541. He voiced his concern that H.B. 2541

would encourage questionable arrests so that law enforcement could gain access to vehicles. Minutes, House Corrections and Juvenile Justice Comm., February 2, 2004. No further action to amend K.S.A. 22-2501 took place in 2004. Minutes, House Corrections and Juvenile Justice Comm., February 2, 2004.

In 2005, the House proposed H.B. 2261, a bill that would have repealed K.S.A. 22-2501 entirely. House J. 2005, p. 230. Again, the House Corrections and Juvenile Justice Committee heard testimony. Jared S. Maag, Deputy Attorney General of the Criminal Litigation Division, testified that only six states, including Kansas, had codified the procedure for a search incident to arrest. He asserted that such codification "only [bred] conflict with prevailing case law." Minutes, House Corrections and Juvenile Justice Comm., February 14, 2005. Maag also discussed *Belton* and *Thornton v. United States*, 541 U.S. 615, 158 L. Ed. 2d 905, 124 S. Ct. 2127 (2004). Maag explained that in *Thornton*, a plurality of the Court, applying *Belton*, permitted a search of a car even though its occupant had already left it when he made contact with a law enforcement officer. Minutes, House Corrections and Juvenile Justice Comm., February 14, 2005. Smith also testified in 2005, on behalf of the KBI and the Kansas Peace Officers Association. This time, however, he asked the Committee to repeal K.S.A. 22-2501 rather than amend it. Minutes, House Corrections and Juvenile Justice Comm., February 14, 2005. The Committee also heard from R. Michael Jennings, legislative chair of the Kansas County and District Attorneys Association. Jennings also requested amendment of K.S.A. 22-2501 to permit officers making an arrest of a vehicle's occupant to search the passenger compartment of that vehicle for evidence of "any" crime. Minutes, House Corrections and Juvenile Justice Comm., February 14, 2005. Hodgkinson testified against the 2005 proposal. His testimony was essentially similar to that he had given in 2004. Minutes, House Corrections and Juvenile Justice Comm., February 14, 2005.

The House voted 101 to 21 in favor of H.B. 2261. House J. 2005, p. 282. The Senate Judiciary Committee heard testimony from Maag and Smith, Minutes, Senate Judiciary Comm., March 17, 2005; but it reverted to amendment rather than repeal and changed

"the" in subsection (c) to "a," Senate J. 2005, p. 383. Realizing that the change undermined the holding of *Anderson*, Representative David Haley opposed the amendment, stating:

"By adopting a warrantless search incident to *any* crime and not to a *specific* crime, this Legislature attempts to shred the Constitutional protections against unwarranted searches or seizures and erodes the bases for probable cause.

"The result, if this bill becomes law, will allow 'fishing expeditions' for what will then become admissible evidence for any crime and not necessarily the base allegation. 'A crime' in the bill should read *'the* crime.'

"The notion is absurd and, I predict, will be found unreasonable under state and/or federal constitutional mandates." Senate J. 2005, p. 396.

Although the Senate passed the bill to amend the statute, no change in K.S.A. 22-2501(c) survived in the final version of the bill. House J. 2005, pp. 1025-27. Senate J. 2005, pp. 836-38.

During the 2006 legislative session, the House, Senate, and Governor approved a repeal bill, S.B. 366. House J. 2006, p. 2184; Senate J. 2006 pp. 2102-03. However, a later Conference Committee amended a subsequent bill, S.B. 431, to revive and amend K.S.A. 22-2501, again changing "the" to "a" in subsection (c). Minutes, House Conference Comm., May 5, 2006. S.B. 431 was subsequently approved by the House, Senate, and Governor. House J. 2006, p. 2333; Senate J. 2006, pp. 1966, 2104. The record is silent on legislative reasoning.

K.S.A. 22-2501(c)'s legislative history does not definitively explain whether the legislature meant for its amendment of the statute to allow search of a space surrounding or recently surrounding an arrestee only for evidence of "a particular" actual crime or "any" merely imagined crime or something in between. It also does not tell us whether the officer conducting the search need possess any particular level of suspicion or probable cause. Although the language appears to move toward *Belton*, the legislature's rejection of outright repeal in favor of amendment may indicate that it wished to retain some restrictions in excess of those demanded by United States Supreme Court case law. It is clear that at least certain members of the legislature were actually aware of the potential constitutional dimension of their choice of article in K.S.A. 22-2501(c). In addition, our construction of the statute is guided by the general

presumption that the legislature acts with full knowledge of existing law. See *State v. Anderson*, 281 Kan. 896, 912, 136 P.3d 406 (2006).

Under these circumstances, we believe we can safely say that the legislature at least intended to undercut our holding in *Anderson*. We thus rule here that K.S.A. 22-2501(c)'s current wording would permit a search of a space, including a vehicle, incident to an occupant's or a recent occupant's arrest, even if the search was not focused on uncovering evidence only of the crime of arrest. We need not further define K.S.A. 22-2501(c)'s current parameters because *Arizona v. Gant*, 556 U.S. 332, leaves those parameters without legal effect.

### *Constitutionality*

The State and Zabriskie correctly agree that our standard of review on the constitutionality of statutes is unlimited. We interpret Section 15 of the Kansas Constitution Bill of Rights to provide the same protection from searches and seizures as the Fourth Amendment to the federal Constitution. See *State v. Wood*, 190 Kan. 778, 788, 378 P.2d 536 (1963). Thus, regardless of whether the statute is challenged under the federal or the state Constitution, we consider ourselves bound by United States Supreme Court precedent. Further,

"[a] statute is presumed constitutional and all doubts must be resolved in favor of its validity. If there is any reasonable way to construe a statute as constitutionally valid, the court must do so. This court not only has the authority, but also the duty, to construe a statute in such a manner that it is constitutional, if the same can be done within the apparent intent of the legislature in passing the statute." *Martin v. Kansas Dept. of Revenue*, 285 Kan. 625, 629-30, 176 P.3d 938 (2008).

In *Gant*, officers, acting on an anonymous tip, knocked on the front door of a suspected drug house and asked to speak to its owner. Defendant Rodney Joseph Gant answered the door, identified himself, and explained that the owner was away. Officers left and "conducted a records check [on Gant], which revealed that Gant's driver's license had been suspended and there was an outstanding warrant for his arrest for driving with a suspended license." *Gant*, 556 U.S. at 336.

Officers returned to the house later that evening, arresting a man for providing a false name and a woman for possessing drug paraphernalia. "Both arrestees were handcuffed and secured in separate patrol cars when Gant arrived" in his car. 556 U.S. at 336. An officer called out to Gant. Gant got out of his car, shut the door, and approached the officer. The officer arrested Gant 10 feet to 12 feet from his car, handcuffed him, and placed him in the back of a patrol car. An officer then searched Gant's car, discovering a bag of cocaine in the pocket of a jacket on the backseat. The officer admitted at the suppression hearing that he conducted the search only "[b]ecause the law says we can do it." 556 U.S. at 337.

The Court's analysis first returned to *Chimel*'s rule and rationale.

"In *Chimel*, we held that a search incident to arrest may only include 'the arrestee's person and the area "within his immediate control" — construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.' That limitation, which continues to define the boundaries of the exception, ensures that the scope of a search incident to arrest is commensurate with its purposes of protecting arresting officers and safeguarding any evidence of the offense of arrest that an arrestee might conceal or destroy. [Citation omitted.] If there is no possibility that an arrestee could reach into the area that law enforcement officers seek to search, both justifications for the search-incident-to-arrest exception are absent and the rule does not apply. [Citation omitted.]" *Gant*, 556 U.S. at 339.

That the Court chose to begin with *Chimel* is significant for at least two reasons.

First, in doing so, it limited *Belton* and rejected cases from other courts that have interpreted it broadly to scale back the general *Chimel* rule. The Court expressly stated that *Belton* "considered *Chimel*'s application to the automobile context" and observed that its holding was "based in large part on our assumption 'that articles inside the relatively narrow compass of the passenger compartment of an automobile are in fact generally, even if not inevitably, within "the area into which an arrestee might reach." ' " *Gant*, 556 U.S. at 341. The Court unambiguously reaffirmed that *Chimel*'s reasoning remains the go-to rubric. It "continues to define the boundaries of the [search-incident-to-arrest] exception"; if one of the exception's two purposes cannot be served by a search, the exception cannot save the search, under the Fourth Amendment. *Belton* did

not create an exception to the exception to be invoked every time law enforcement wants to search a vehicle in the vicinity and from which the arrestee has emerged. Rather, *Belton* merely applied *Chimel* to the unique set of circumstances before the Court.

The Court's return to the first principles of *Chimel* is also significant because it set up compelling reinforcement of our court's *Anderson* interpretation of the pre-2006 version of K.S.A. 22-2501(c). *Gant*'s equation of purpose and scope deviated somewhat from the *Anderson* discussion, but it arrived at the same ultimate destination: To have a valid search incident to arrest, when there is no purpose to protect law enforcement present, the search must seek evidence to support the crime of arrest, not some other crime, be it actual, suspected, or imagined. In the vehicle context, "in many cases, as when a recent occupant is arrested for a traffic violation, there will be no reasonable basis to believe the vehicle contains . . . evidence [relevant to the crime of arrest.]" *Gant*, 556 U.S. at 343.

In *Gant*, the Court recognized, Gant was in no position to reach into his car to access a weapon or to destroy or conceal evidence of the crime of arrest. This contrasted with the defendant in *Belton*, where there had been four arrestees and a lone officer with one set of handcuffs. Gant had already been secured in a patrol car, and there were several officers at the scene. There was a real threat in *Belton* that the defendant or another arrestee could reach into the vehicle. That threat was nonexistent in *Gant*.

The Court also observed:

"Other established exceptions to the warrant requirement authorize a vehicle search under additional circumstances when safety or evidentiary concerns demand. For instance, *Michigan v. Long*, 463 U.S. 1032 (1983), permits an officer to search a vehicle's passenger compartment when he has reasonable suspicion that an individual, whether or not the arrestee, is 'dangerous' and might access the vehicle to 'gain immediate control of weapons' [Citation omitted.] [And] "[i]f there is probable cause to believe a vehicle contains evidence of criminal activity, *United States v. Ross*, 456 U.S. 798, 820-21 (1982), authorizes a search of any area of the vehicle in which the evidence might be found. . . . [, allowing] searches for evidence relevant to offenses other than the offense of arrest [ . . . .]" *Gant*, 556 U.S. at 346.

The Court thus held that Gant's search was unreasonable under the Fourth Amendment because Gant was secured and could not reach the passenger compartment; and it was unreasonable to believe the vehicle contained evidence of Gant's offense of arrest, *i.e.*, driving with a suspended license.

Factually, this case is more similar to *Gant* than to *Belton* but, analytically, a factual comparison is unnecessary. There is no dispute that there was no warrant to search the car. A recognized exception to the Fourth Amendment's warrant requirement must apply, see *State v. Thompson*, 284 Kan. 763, 776, 166 P.3d 1015 (2007); or the search was invalid and the evidence it uncovered appropriately suppressed by the district court judge. When a search is challenged, the State bears the burden of demonstrating that it was lawful. See *State v. Ibarra*, 282 Kan. 530, 533, 147 P.3d 842 (2006). The State's only argument here is that the search of the car was a proper search incident to the arrest of Henning under K.S.A. 22-2501(c). (Zabriskie, although out of the car and standing near Henning during the search, had not yet been arrested herself.) Even more specifically, the State's only argument, based as it must be on the testimony of Stevenson, is that the search depended upon the recently amended and newly effective language of K.S.A. 22-2501(c), which, as we have discussed above, considerably broadened its scope and exceeded the purposes allowed for such searches under the *Chimel* rule. As Stevenson noted, his training was up-to-the-minute and told him he was permitted to search the car not only for evidence of the crime of arrest but for evidence of another crime or crimes.

*Gant* expressly disapproved of this approach:

"To read *Belton* as authorizing a vehicle search incident to every recent occupant's arrest would thus untether the rule from the justifications underlying the *Chimel* exception—a result clearly incompatible with our statement in *Belton* that it 'in no way alters the fundamental principles established in the *Chimel* case regarding the basic scope of searches incident to lawful custodial arrests.' [Citation omitted.]

. . . [T]he *Chimel* rationale authorizes police to search only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." 556 U.S. at 343.

In view of *Gant*, we are compelled to strike down the current version of K.S.A. 22-2501(c) as facially unconstitutional under the

Fourth Amendment and Section 15 of the Kansas Constitution Bill of Rights. The district court judge was right to be suspicious of the statute's wording; its breadth cannot be reconciled with the narrowness of the search and seizure concept it was meant to codify, not automatically in a vehicle context nor in the context of any other area within immediate control of an arrestee.

The district court is affirmed. The Court of Appeals is reversed.