NOT DESIGNATED FOR PUBLICATION

No. 112,242

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

SEAN ALLEN STECKLINE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Ellis District Court; GLENN R. BRAUN, judge. Opinion filed January 27, 2017. Affirmed.

*Michael S. Holland II*, of Holland and Holland, of Russell, for appellant.

*Christopher W.D. Lyon*, assistant county attorney, *Kristafer R. Ailslieger*, deputy solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., PIERRON and MALONE, JJ.

*Per Curiam*: Sean Allen Steckline appeals his misdemeanor conviction of driving under the influence of alcohol (DUI). Steckline contends that the district court erred in denying his motion to suppress the test results of his warrantless blood draw undertaken pursuant to the Kansas Implied Consent Law because it did not fall under any exception to the Fourth Amendment's warrant requirement. We hold the warrantless blood draw cannot be upheld based on Steckline's consent, but the blood test results are still admissible under the good-faith exception to the exclusionary rule. Thus, we affirm the district court's judgment.

1

FACTUAL AND PROCEDURAL BACKGROUND

On June 4, 2013, at approximately 11:48 p.m., Deputy Thomas Garner of the Ellis County Sherriff's Department noticed a vehicle driving with its high beam headlights on. Garner flashed his headlights at the vehicle in an attempt to get the driver to dim his high beams, but the driver did not comply. After being forced to pull over because he was blinded by the vehicle's high beams, Garner turned on his emergency lights and stopped the vehicle.

The driver of the vehicle was identified as Steckline. When speaking to Steckline, Garner noticed a strong odor of alcohol coming from his breath, so he asked Steckline to perform field sobriety tests. As Steckline exited his vehicle, Garner noticed that he appeared unsteady. During the walk-and-turn test, Steckline exhibited four clues of impairment. Steckline declined to perform the one-leg-stand test, claiming that he had back and knee issues. He also refused to take a preliminary breath test.

Garner placed Steckline under arrest for DUI and transported him to the Ellis County Law Enforcement Center. Garner provided Steckline with the implied consent advisories, both orally and in writing via the DC-70 form. The advisories notified Steckline that his refusal to submit to blood-alcohol testing could result in a separate criminal prosecution against him under certain circumstances. Steckline then agreed to submit to a blood test to determine his blood-alcohol concentration (BAC). A sample of Steckline's blood was drawn at 1:22 a.m. The results of the blood test revealed that Steckline had a BAC of 0.18—well over the legal limit of .08.

On November 25, 2013, the State charged Steckline with one count of DUI in violation of K.S.A. 2012 Supp. 8-1567(a)(2), or in the alternative DUI in violation of K.S.A. 2012 Supp. 8-1567(a)(3). Because this was Steckline's first DUI offense, the charge was a class B nonperson misdemeanor.

2

On January 16, 2014, Steckline filed a motion to suppress the results of his blood-alcohol test, arguing that his blood sample was obtained without a warrant in violation of the Fourth Amendment. The parties agreed to stipulate to the facts as set out above. Steckline further agreed that if the district court denied his motion to suppress, he would proceed with a bench trial based on the stipulated facts.

On April 23, 2014, the district court issued its ruling. The district court found that Steckline had properly consented to the blood test under the Kansas Implied Consent Law. Accordingly, the district court denied Steckline's motion to suppress the results of his blood test. Based on the stipulated facts, the district court found that Steckline was guilty of DUI in violation of K.S.A. 2012 Supp. 8-1567(a)(2). Steckline timely appealed.

DOES A WARRANTLESS BLOOD DRAW AUTHORIZED BY THE KANSAS IMPLIED CONSENT LAW FALL UNDER THE CONSENT EXCEPTION TO THE WARRANT REQUIREMENT?

Steckline initially filed a brief with this court and claimed that subjecting him to a blood test pursuant to the Kansas Implied Consent Law constituted an unreasonable warrantless search in violation of the Fourth Amendment. Specifically, Steckline claimed that any consent given under the Kansas Implied Consent Law is not a knowing, intelligent, and voluntary consent free of duress or coercion because of the threat of adverse legal consequences if he refused to submit to testing. Steckline argued that because the United States Supreme Court held in *Missouri v. McNeely*, 569 U.S. __, 133 S. Ct. 1552, 185 L. Ed. 2d 696 (2013), that the Fourth Amendment requires some exception to the warrant requirement prior to conducting a warrantless blood test, and because there was no valid consent here, his blood test results were illegally obtained.

The State initially filed a brief with this court and argued that a driver's consent to a blood test after being warned of the adverse legal consequences following a refusal does not mean the consent was not freely and voluntarily given. The State contended that

3

coerced, or even forced, consent does not render consent involuntary, especially in light of the State's compelling interest in maintaining safety on public roads. The State submitted that Steckline's blood draw as authorized by the Kansas Implied Consent Law was a reasonable search under the consent exception to the warrant requirement and did not violate Steckline's Fourth Amendment rights.

In reviewing a district court's decision on a motion to suppress, the appellate court reviews the district court's factual findings to determine whether they are supported by substantial competent evidence. We have unlimited review of the district court's ultimate legal conclusion. *State v. Patterson*, 304 Kan. 272, 274, 371 P.3d 893 (2016). When the material facts to the district court's decision on a motion to suppress evidence are not in dispute, the question of whether to suppress is a question of law over which an appellate court has unlimited review. *State v. Stevenson*, 299 Kan. 53, 57, 321 P.3d 754 (2014).

As a preliminary matter, we note that the record is unclear as to whether Steckline was subject to the Kansas statute imposing criminal penalties for refusing to submit to a blood test. K.S.A.2012 Supp. 8-1025 only imposes criminal consequences for refusing a blood test if the person has a prior test refusal, a prior conviction for drunk driving, or the person previously has entered into a diversion agreement. See K.S.A. 2012 Supp. 8-1025(a)(1)-(2). Here, we know that Steckline had no prior DUI convictions or diversions because he was charged with a first-offense DUI. However, it is possible that Steckline had a prior test refusal as defined in K.S.A. 2012 Supp. 8-1013, in which case the threat of criminal prosecution still applied to him if he refused the blood test. We cannot assume from a silent record that Steckline had no prior test refusals, and the burden of proving the legality of the search and seizure of Steckline's blood sample was on the State. See K.S.A. 22-3216(2). Thus, for the purpose of Steckline's appeal, we will presume that he was subject to criminal penalties under K.S.A.2012 Supp. 8-1025 for refusing to submit to a blood test and that his consent to the blood test was premised on a threat of criminal penalties for refusal to submit to the test.

After the parties submitted their initial briefs, the United States Supreme Court issued its decision in *Birchfield v. North Dakota*, 579 U.S. __, 136 S. Ct. 2160, 195 L. Ed. 2d 560 (2016). In *Birchfield*, the United States Supreme Court held that the Fourth Amendment permits warrantless breath tests incident to arrests for drunk driving but not warrantless blood tests. 136 S. Ct. at 2184-85. The Court also determined that motorists may not be criminally punished for refusing to submit to a warrantless blood draw. 136 S. Ct. at 2185-86. Noting that it was not addressing the constitutionality of various state implied consent laws, the Court ultimately held that:

"Our prior opinions have referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply. . . .

"It is another matter, however, for a State not only to insist upon an intrusive blood test, but also to impose criminal penalties on the refusal to submit to such a test. There must be a limit to the consequences to which motorists may be deemed to have consented by virtue of a decision to drive on public roads.

". . . [W]e conclude that motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense." 136 S. Ct. at 2185-86.

Also, after the parties submitted their initial briefs in this case but before the United States Supreme Court filed its decision in *Birchfield*, the Kansas Supreme Court issued decisions in *State v. Nece*, 303 Kan. 888, 367 P.3d 1260 (2016), and *State v. Ryce*, 303 Kan. 899, 368 P.3d 342 (2016). In *Ryce*, the court held that K.S.A. 2014 Supp. 8-1025, which imposes criminal penalties upon a motorist for refusing to submit to any method of blood-alcohol testing, is facially unconstitutional because the statute is not narrowly tailored to serve a compelling state interest. 303 Kan. at 963. In *Nece*, the court held that a driver's consent to a breath test premised on the threat of criminal prosecution for test refusal "was unduly coerced because, contrary to the informed consent advisory, the State could not have constitutionally imposed criminal penalties if [the driver] had refused to submit to breath-alcohol testing. Thus, because [the] consent was premised on

the inaccurate information in the advisory, [the] consent was involuntary." 303 Kan. at 889.

Our Supreme Court has granted the State's motion for rehearing in both *Ryce* and *Nece*; neither decision is final. However, the rulings in *Ryce* and *Nece,* at least as they apply to warrantless blood tests in contrast to warrantless breath tests, are reinforced by the holding in *Birchfield* that motorists may not be criminally punished for refusing to submit to a warrantless blood draw and that consent to a warrantless blood test cannot be premised on a threat of criminal penalties for refusal to submit to the test.

Here, Steckline submitted to a warrantless blood test and his case is controlled by *Birchfield*. The Fourth Amendment permits warrantless breath tests incident to arrests for drunk driving but not warrantless blood tests. *Birchfield*, 136 S. Ct. at 2184-85. Moreover, "motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense." 136 S. Ct. at 2186. Based on *Birchfield*, the warrantless blood draw of Steckline cannot be upheld based on either search incident to arrest or consent. Thus, we reject the State's claim that Steckline's warrantless blood test authorized by the Kansas Implied Consent Law falls under the consent exception to the warrant requirement when Garner advised Steckline that failure to submit to the test constituted a separate crime. Although Garner may have inadvertently done so, he violated Steckline's constitutional rights by asking Steckline to submit to a blood test and advising him that refusal to submit to the test constituted a separate crime.

CAN STECKLINE'S BLOOD TEST RESULTS BE ADMITTED UNDER THE GOOD-FAITH EXCEPTION TO THE EXCLUSIONARY RULE?

After the United States Supreme Court decided *Birchfield*, this court issued a show cause order as to why Steckline's case should not be summarily reversed and remanded for a new trial in light of the Court's holding about warrantless blood tests. In response,

6

the State asserted that the results of Steckline's blood test should be admissible under the good-faith exception to the exclusionary rule. After receiving the State's response to the show cause order, this court ordered the parties to file supplemental briefs on two issues: (1) Should the State be allowed to assert a good-faith exception to the exclusionary rule for the first time on appeal? (2) Does the good-faith exception to the exclusionary rule apply under the facts of this case, and, if so, can this court make that determination without remanding the case to the district court to hear additional evidence?

*Can a claim invoking the good-faith exception to the exclusionary rule be raised for the first time on appeal?*

The State explains that it did not raise the good-faith exception in the district court for the obvious reason that when the case was before the district court, Kansas caselaw clearly permitted warrantless blood draws pursuant to the Kansas Implied Consent Law. The State argues that it was not until "new case law . . . fundamentally altered the legal landscape regarding warrantless blood draws" that the State even needed to consider the applicability of the good-faith exception to the exclusionary rule. The State asserts that it should be permitted to invoke the good-faith exception to the exclusionary rule for the first time on appeal because the newly asserted theory involves only a question of law based on proved or admitted facts and is determinative of the case.

Steckline urges this court not to consider the applicability of the good-faith exception for the first time on appeal. In support of his argument, he notes that our Supreme Court in *Nece* declined to consider the issue of the good-faith exception for the first time on appeal. See 303 Kan. at 897. However, the procedural facts in *Nece* were significantly different from the facts herein. In *Nece*, the State not only failed to file a supplemental brief presenting the good-faith argument to the Supreme Court, but at oral argument the attorney for the State conceded that the State was not seeking application of the exception. 303 Kan. at 897. Under these circumstances, our Supreme Court declined to consider the potential application of the good-faith exception, noting that an argument

7

not briefed is deemed waived and abandoned. 303 Kan. at 897. Here, the State has asserted the application of the good-faith exception to the exclusionary rule and the parties have filed supplemental briefs addressing this issue.

Although generally a new legal theory cannot be raised for the first time on appeal, there are three recognized exceptions to this rule: (1) The newly asserted theory involves only questions of law based on proved or admitted facts and is determinative of the case; (2) consideration of the theory is necessary to serve the ends of justice or prevent a denial of fundamental rights; and (3) the judgment of the trial court was correct but based on the wrong grounds or reasoning. *State v. Jones*, 302 Kan. 111, 117, 351 P.3d 1228 (2015). If a party seeks to raise a new issue on appeal, Supreme Court Rule 6.02(a)(5) (2015 Kan. Ct. R. Annot. 41) requires an explanation of why an issue not raised below should be considered for the first time on appeal.

There is no factual dispute here as the relevant facts were stipulated in district court. Based on the stipulated facts, Steckline's consent to the blood test is deemed involuntary only because it was obtained as a result of the incorrect and coercive implied consent advisories that threatened criminal prosecution as a consequence of refusing to submit to the test. Steckline is not claiming that his consent was otherwise involuntary. In ordering the parties to file supplemental briefs on whether the good-faith exception applied in this case, we directed the parties to address whether this court can make that determination without remanding the case to the district court to hear additional evidence. In his response, Steckline has pointed to no disputed facts and he has made no argument as to why the case must be remanded to the district court to hear additional evidence.

We note that our Supreme Court considered the applicability of the good-faith exception to the exclusionary rule for the first time on appeal in *State v. Daniel*, 291 Kan. 490, 242 P.3d 1186 (2010), *cert. denied* 563 U.S. 945 (2011). In that case the defendant was convicted of possession of methadone, which was found during a warrantless search

8

of her vehicle following her arrest for driving with a suspended license. The district court determined the search was lawful under K.S.A. 22-2501(c), which at the time authorized a vehicle search incident to an arrest for the purpose of discovering the fruits, instrumentalities, or evidence of *any crime*.

While the defendant in *Daniel* was appealing her conviction, K.S.A. 22-2501(c) was declared unconstitutional in *State v. Henning*, 289 Kan. 136, 148-49, 209 P.3d 711 (2009), which applied *Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009). *Daniel*, 291 Kan. at 491-92. Our Supreme Court in *Daniel* allowed the State to argue for the first time on appeal that the exclusionary rule does not apply to evidence obtained by police who acted in objectively reasonable reliance upon a statute that was subsequently declared unconstitutional. 291 Kan. at 492-93. The court ultimately held that the good-faith exception applied and upheld the vehicle search. 291 Kan. at 505.

Steckline's case is procedurally similar to the situation presented in *Daniel*. Here, the State's good-faith argument involves only a question of law:  namely, whether the good-faith exception to the exclusionary rule should apply to warrantless blood tests as authorized by the Kansas Implied Consent Law prior to the holding in *Birchfield* that motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense. The underlying facts were stipulated by the parties in district court, and Steckline has offered no reason why this court cannot address the good-faith exception without remanding the case to the district court to hear additional evidence. Thus, we conclude that the State can invoke the good-faith exception to the exclusionary rule for the first time on appeal because the newly asserted theory involves only a question of law based on proved or admitted facts and is determinative of the case.

9

*Does the good-faith exception apply here?*

The State urges this court to apply the good-faith exception to the exclusionary rule here because at the time of the warrantless blood draw, Garner's actions were legal. Therefore, the State asserts that suppressing the results of Steckline's blood-alcohol test would not serve the purpose of the exclusionary rule which is to deter police misconduct. The State points out that decisions casting doubt on the constitutionality of warrantless blood draws did not begin to come out until nearly 4 years after Steckline's arrest. Thus, the State argues that "[e]xcluding the evidence obtained by [the officer] based on changes in the law that occurred nearly three years later 'cannot logically contribute to the deterrence of Fourth Amendment violations.'" (Quoting *Illinois v. Krull*, 480 U.S. 340, 350, 107 S. Ct. 1160, 94 L. Ed. 2d 364 [1987].)

In response, Steckline claims that applying the good-faith exception to the exclusionary rule here would have a "chilling effect" on an individual's constitutional rights. Specifically, he points to Justice Sandra Day O'Connor's admonitions in *Krull*, 480 U.S. at 366 (O'Connor, J., dissenting), that "'[p]roviding legislatures a grace period during which the police may freely perform unreasonable searches in order to convict those who might have otherwise escaped creates a positive incentive to promulgate unconstitutional laws.'" Steckline argues that the exclusionary rule must be applied here in order to prevent the legislature from "curtail[ing], limit[ing], or even violat[ing] an individual's constitutional rights through the passage of some new, experimental legislation."

Whether the good-faith exception applies is a question of law over which an appellate court has unlimited review. See *State v. Carlton*, 297 Kan. 642, 645, 304 P.3d 323 (2013) ("The only remaining inquiry is whether the appropriate remedy is to suppress the evidence seized. This is a question of law."); *Daniel*, 291 Kan. at 496.

Warrantless searches are per se unreasonable, and thus unlawful, unless they fall within one of the established exceptions to the warrant requirement. *Daniel*, 291 Kan. at 496. There is no express constitutional prohibition against using illegally obtained evidence; however, the exclusionary rule, which is a judicially created remedy, prohibits "the use of unconstitutionally obtained evidence in a criminal proceeding against the victim of an illegal search." 291 Kan. at 496 (citing *Krull*, 480 U.S. at 347). The purpose of the exclusionary rule is to protect Fourth Amendment rights through deterrence, but it is not a personal constitutional right of a defendant. *United States v. Leon*, 468 U.S. 897, 906, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984).

The United States Supreme Court in *Krull* carved out an exception to the exclusionary rule when a law enforcement officer, in good faith, reasonably relies on an unconstitutional statute because suppression does not further the rule's deterrent intent:

> "Unless a statute is clearly unconstitutional, an officer cannot be expected to question the judgment of the legislature that passed the law. If the statute is subsequently declared unconstitutional, excluding evidence obtained pursuant to it prior to such a judicial declaration will not deter future Fourth Amendment violations by an officer who has simply fulfilled his responsibility to enforce the statute as written." 480 U.S. at 349-50.

Our Supreme Court recognized and applied the good-faith exception as articulated in *Krull* for the first time in *Daniel.* Noting that the good-faith exception is not unlimited, our Supreme Court echoed the United States Supreme Court's admonition in *Krull* that in order for the good-faith exception to apply, an officer's reliance on a statute must be objectively reasonable. *Daniel*, 291 Kan. at 500 (citing *Krull*, 480 U.S. at 355). A law enforcement officer cannot claim good-faith reliance on a statute if a reasonable officer should have known that the statute was unconstitutional. 291 Kan. at 500 (citing *Krull*, 480 U.S. at 355). Additionally, reliance on a statute is not objectively reasonable if the legislature "'wholly abandoned its responsibility to enact constitutional laws'" when passing the statute. 291 Kan. at 500 (quoting *Krull*, 480 U.S. at 355).

11

In *Birchfield*, the United States Supreme Court noted that it was not addressing the constitutionality of various state implied consent laws. 136 S. Ct. at 2185. Nevertheless, the *Birchfield* Court held that motorists cannot be criminally punished for refusing to submit to a warrantless blood draw and that motorists cannot be deemed to have consented to submit to a blood test on the pain of committing a criminal offense. 136 S. Ct. at 2185-86. In *Ryce*, 303 Kan. at 963, our Supreme Court held that K.S.A. 2014 Supp. 8-1025 was facially unconstitutional, and in *Nece*, 303 Kan. at 896-97, our Supreme Court ruled that the implied consent advisories in K.S.A. 2014 Supp. 8-1001 were impermissibly coercive. Although the decisions in *Ryce* and *Nece* are not final, the United States Supreme Court's decision in *Birchfield* makes it clear that K.S.A. 2012 Supp. 8-1025 and the implied consent advisories in K.S.A. 2012 Supp. 8-1001(k)(4) are no longer enforceable at least as to blood tests. The issue here is whether Garner objectively and reasonably relied on these statutes when he provided Steckline with the implied consent advisories and asked him to consent to a blood test.

At the time of Steckline's arrest, Garner was required by K.S.A. 2012 Supp. 8-1001(k)(4) to inform Steckline that he could face criminal penalties if he refused to submit to any method of blood-alcohol testing. Also, at the time of Steckline's arrest, Kansas courts had consistently upheld the constitutionality of warrantless blood draws undertaken pursuant to K.S.A. 8-1001. See, *e.g.*, *Martin v. Kansas Dept. of Revenue*, 285 Kan. 625, 635, 176 P.3d 938 (2008); *Furthmyer v. Kansas Dept. of Revenue*, 256 Kan. 825, 835, 888 P.2d 832 (1995); *Popp v. Motor Vehicle Department*, 211 Kan. 763, 767, 508 P.2d 991 (1973).

Garner had no reason to know that the implied consent advisories would be found impermissibly coercive 4 years after Steckline's arrest, and K.S.A. 2012 Supp. 8-1001(k)(4) was not so clearly unconstitutional at the time of Steckline's arrest that a reasonably well-trained officer would have known that it was unconstitutional. By giving the advisories and informing Steckline that he could be charged with a separate crime for

12

refusing to submit to a blood test, Garner was merely fulfilling his responsibility to enforce the statute as written, and suppression would not serve the deterrent aim of the exclusionary rule.

Furthermore, there is no indication that in enacting either K.S.A. 2012 Supp. 8-1025 or K.S.A. 2012 Supp. 8-1001(k)(4), the Kansas Legislature wholly abandoned its responsibility to pass constitutional laws. Other states had statutes similar to K.S.A. 2012 Supp. 8-1025 and continued to uphold them until the United States Supreme Court ruled in *Birchfield* that these types of criminal penalty laws are unenforceable as to blood tests. See, *e.g.*, *Wing v. State*, 268 P.3d 1105, 1109-10 (Alaska App. 2012) (upholding the constitutionality of an Alaska statute criminalizing the refusal to submit to blood-alcohol test); *State v. Bernard*, 859 N.W.2d 762, 774 (Minn. 2015) (Minnesota statute that criminalizes refusal to submit to blood-alcohol test passes rational basis review).

Steckline argues that applying the good-faith exception here would have a chilling effect because it will encourage the legislature to pass unconstitutional laws. But as discussed above, the good-faith exception is not absolute and reliance on a statute must be reasonable; reliance is not reasonable if the legislature wholly abandoned its duty to enact constitutional laws. *Krull*, 480 U.S. at 355. As the court concluded in *Daniel*, the possibility of the legislature hiding behind the good-faith exception to enact blatantly unconstitutional laws is unlikely to occur because "the safeguards required by *Krull* for a court to examine whether law enforcement reliance on a particular statute was objective and reasonable under the circumstances militate against the possibility for legislative mischief that might seek to take unfair advantage of this exception." 291 Kan. at 500.

Finally, Steckline points to *State v. Pettay*, 299 Kan. 763, 326 P.3d 1039 (2014), as an example of a case where the Kansas Supreme Court declined to apply the good-faith exception to the exclusionary rule in order to uphold a vehicle search incident to the defendant's arrest pursuant to K.S.A. 22-2501, after the statute was subsequently held to

13

be unconstitutional. But *Pettay* is distinguishable because the law enforcement officer in that case searched the vehicle after the driver had been handcuffed and placed in the backseat of a patrol car. The court pointed out that K.S.A. 22-2501, upon which the officer relied to conduct the search, had always required that a search incident to an arrest must be limited to the area within the arrestee's immediate presence. 299 Kan. at 770. Because the law enforcement officer failed to comply with the plain language of the statute and exceeded the permissible scope of the search set forth in K.S.A. 22-2501, the court determined that the good-faith exception to the exclusionary rule should not be applied to uphold the search. 299 Kan. at 771-72.

In sum, the good-faith exception is applicable here. There is nothing to suggest that at the time of Steckline's arrest, Garner should have known that the criminal penalty statute was unconstitutional and that the Kansas implied consent advisories were coercive, nor is there any indication that the legislature wholly abandoned its duty to enact constitutional laws in passing either statute. When Garner advised Steckline that failure to submit to the blood test constituted a separate crime, Garner was only doing what he was required by law to do. Suppressing Steckline's blood test results would not serve the purpose of the exclusionary rule, which is to deter police misconduct. Thus, while the district court based its decision to deny Steckline's motion to suppress his blood test results on the wrong ground, we uphold the district court's decision as being correct for the wrong reason. See *State v. Overman*, 301 Kan. 704, 712, 348 P.3d 516 (2015) (district court's decision will be upheld even though it relied upon the wrong ground).

Affirmed.