NOT DESIGNATED FOR PUBLICATION

No. 116,204

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

TYLER W. EASLEY,
*Appellant*.

MEMORANDUM OPINION

Appeal from Harper District Court; LARRY T. SOLOMON, judge. Opinion filed July 6, 2018.
Affirmed.

*Michael S. Holland II*, of Holland and Holland, of Russell, for appellant.

*Kristafer R. Ailslieger*, deputy solicitor general, and *Derek Schmidt*, attorney general, for
appellee.

Before HILL, P.J., PIERRON and MALONE, JJ.

PER CURIAM: Tyler W. Easley appeals his conviction of driving under the
influence (DUI). Easley claims the district court erred in denying his motion to suppress
the evidence of his breath test results. Easley correctly argues that his consent to the
breath test was invalid because he had been advised that refusal to submit to the test
constituted a separate crime. But because we find that the evidence was admissible under
the good-faith exception to the exclusionary rule, we affirm the district court's judgment.

1

During the early morning hours of May 10, 2014, Harper County Sheriff's Deputy Braden Blackburn stopped Easley's vehicle after watching him make a wide turn, venture into the opposing lane of traffic, swerve back into the correct lane, and nearly hit the curb on the far side of that lane. Blackburn observed that the vehicle contained Easley and four passengers, and he called for backup to assist with the traffic stop. Harper County Sheriff's Deputy Melanie Miller responded to the call.

As Easley exited his vehicle, he used the door handle for balance but still had trouble getting out of his seat without losing his balance. As he walked, Easley swayed unsteadily. He emitted an odor of alcohol and presented glazed and bloodshot eyes. He admitted to having a few drinks at home. Miller asked Easley to perform the walk-and-turn test. She observed six out of eight possible clues. She also asked him to perform the one-leg-stand test. He exhibited two out of four clues on that test. Based on the collective observations of the deputies, Miller arrested Easley for DUI.

Miller transported Easley to the county jail and provided him with written and verbal implied consent advisories. The DC-70 form used by Miller advised Easley that a test refusal could result in criminal and administrative penalties. After receiving the advisories, Easley agreed to submit to an evidentiary breath test. Miller followed the established Kansas Department of Health and Environment's (KDHE) protocols for the Intoxilyzer 8000 breath test. Easley's breath test, conducted within three hours of his operation of his motor vehicle, showed a blood alcohol concentration of .215.

On May 19, 2014, the State charged Easley with alternative counts of DUI. Easley moved to suppress the breath test results, arguing that his consent to the test was not voluntary but the product of impermissible coercion. The district court denied the motion to suppress. Easley entered a stipulation of facts and waived his right to a jury trial. The district court adopted the stipulated facts and found Easley guilty of DUI. The district court sentenced Easley to an underlying jail term of 6 months but granted 12 months of

2

probation after Easley served 48 hours in jail. The district court also imposed a $750 fine. At Easley's request, the district court stayed imposition of the sentence pending appeal.

Easley filed a timely notice of appeal. Because the Kansas Supreme Court's decisions in *State v. Ryce*, 303 Kan. 899, 911-12, 368 P.3d 342 (2016) (*Ryce I*), and in *State v. Nece*, 303 Kan. 888, 895-97, 367 P.3d 1260 (2016) (*Nece I*), were pending, Easley requested a stay of briefing, which this court granted. After the Kansas Supreme Court issued its opinions in *State v. Ryce*, 306 Kan. 682, 396 P.3d 711 (2017) (*Ryce II*), and *State v. Nece*, 306 Kan. 679, 396 P.3d 709 (2017) (*Nece II*), this court lifted the stay.

Both in the district court and on appeal, Easley has challenged the admission of his Intoxilyzer 8000 breath test results as fruit of an unconstitutional search. Specifically, Easley argues that the information in the implied consent advisory unconstitutionally coerced his consent to the search.

When a criminal defendant moves to suppress evidence as fruit of an illegal search, the State bears the burden to establish the lawfulness of the search. *State v. Reiss*, 299 Kan. 291, 296, 326 P.3d 367 (2014). Appellate review of the district court's suppression ruling grants deference to the district court's factual findings to the extent those findings are supported by substantial competent evidence but conducts plenary review over the ultimate suppression ruling. *Nece I*, 303 Kan. at 894. If the facts are undisputed, as in this case, the appellate court exercises unlimited review over the suppression issue. *State v. Pettay*, 299 Kan. 763, 768, 326 P.3d 1039 (2014).

The Fourth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, and § 15 of the Kansas Constitution Bill of Rights protect individuals from unreasonable searches or seizures by the government. *Skinner v. Railway Labor Executives' Assn.*, 489 U.S. 602, 619, 109 S. Ct. 1402, 103 L. Ed. 2d 639 (1989); *State v. Baker*, 306 Kan. 585, 589-90, 395 P.3d 422 (2017). A

breath test constitutes a search under the Fourth Amendment. See *Birchfield v. North Dakota*, 579 U.S. ___, 136 S. Ct. 2160, 2173, 195 L. Ed. 2d 560 (2016); *Ryce I*, 303 Kan. at 911-12. A warrantless search is a categorically unreasonable search unless it fits one or more of a few well-delineated exceptions to the warrant requirement. *Los Angeles v. Patel*, 576 U.S. ___, 135 S. Ct. 2443, 2452, 192 L. Ed. 2d 435 (2015); *Nece I*, 303 Kan. at 891. No one disputes that Miller did not obtain a warrant before obtaining Easley's breath sample. Therefore, in order to validate the breath test administered to Easley, the State must establish that the warrantless search was justified under an exception to the warrant requirement.

*Consent to search*

One of these well-delineated exceptions to the warrant requirement is consent to search. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973); *Nece I*, 303 Kan. at 892. To be valid, consent must be freely and voluntarily given. *Schneckloth*, 412 U.S. at 222; *Nece I*, 303 Kan. at 893. Normally, the voluntariness of a consent is a question of fact determined from the totality of the circumstances. *Schneckloth*, 412 U.S. at 228; *Nece I*, 303 Kan. at 893.

Easley argues that the implied consent advisory—which threatens a driver with criminal prosecution and administrative penalties if he or she refuses a breath test— unconstitutionally coerces consent to the test and so the consent cannot be considered voluntary under the federal and Kansas constitutions. In *Ryce I*, the Kansas Supreme Court held that K.S.A. 2014 Supp. 8-1025, which imposes criminal penalties upon a motorist for refusing to submit to any method of blood-alcohol testing, is facially unconstitutional because the statute criminalizes a defendant's right to withdraw his or her consent to a warrantless search and the statute is not narrowly tailored to serve a compelling state interest. 303 Kan. at 963. In *Nece I*, our Supreme Court held that a driver's consent to a breath test premised on the threat of criminal prosecution for test

4

refusal "was unduly coerced because, contrary to the informed consent advisory, the State could not have constitutionally imposed criminal penalties if [the driver] had refused to submit to breath-alcohol testing. Thus, because [the] consent was premised on the inaccurate information in the advisory, [the] consent was involuntary." 303 Kan. at 889. Our Supreme Court granted the State's motion for rehearing in both *Ryce I* and *Nece I*, but the court essentially reaffirmed its holding in each case. See *Ryce II*, 306 Kan. at 699-700; *Nece II*, 306 Kan. at 681.

Here, Easley submitted to a warrantless breath test and the consent issue is controlled by *Ryce II* and *Nece II*. Based on those decisions, Easley's warrantless breath test cannot be upheld based on consent. Although Miller may have inadvertently done so, she violated Easley's constitutional rights by asking him to submit to a breath test and advising him that refusal to submit to the test constituted a separate crime.

The application of *Ryce II* and *Nece II* to Easley's case would seem to warrant suppression of the breath test results and possibly reversal of his DUI conviction, except that the State has raised the possibility that the search could be upheld as a search incident to arrest or, alternatively, that the exclusionary rule did not require suppression of the test results when the officer acted in good faith in relying on the implied consent advisory. We will address these issues in reverse order.

*Good-faith exception*

The State contends that, even if Easley's breath test sample were procured in a manner which violated his constitutional rights, the court should not apply the exclusionary rule to the evidence obtained as a result of the test because Miller acted in good faith in obtaining the breath sample. Easley argues that the good-faith issue is not properly before this court for the first time on appeal and, in any event, the good-faith exception does not save the suppression of the illegal evidence.

Although generally a new legal theory cannot be raised for the first time on appeal, there are three recognized exceptions to this rule: (1) the newly asserted theory involves only questions of law based on proved or admitted facts and is determinative of the case; (2) consideration of the theory is necessary to serve the ends of justice or prevent a denial of fundamental rights; and (3) the judgment of the trial court was correct but based on the wrong grounds or reasoning. *State v. Jones*, 302 Kan. 111, 117, 351 P.3d 1228 (2015). If a party seeks to raise a new issue on appeal, Supreme Court Rule 6.02(a)(5) (2018 Kan. S. Ct. R. 34) requires an explanation of why an issue not raised below should be considered for the first time on appeal.

There is no factual dispute here as the relevant facts were stipulated in district court. Based on the stipulated facts, Easley's consent to the breath test is considered involuntary only because it was obtained as a result of the incorrect and coercive implied consent advisories that threatened criminal prosecution as a consequence of refusing to submit to the test. Easley is not claiming that his consent was otherwise involuntary.

We note that our Supreme Court considered the applicability of the good-faith exception to the exclusionary rule for the first time on appeal in *State v. Daniel*, 291 Kan. 490, 242 P.3d 1186 (2010), *cert. denied* 563 U.S. 945 (2011). In that case the defendant was convicted of possession of methadone, found during a warrantless search of her vehicle following her arrest for driving with a suspended license. The district court determined the search was lawful under K.S.A. 22-2501(c), which at the time authorized a vehicle search incident to an arrest for the purpose of discovering the fruits, instrumentalities, or evidence of *any crime*.

While the defendant in *Daniel* was appealing her conviction, K.S.A. 22-2501(c) was declared unconstitutional in *State v. Henning*, 289 Kan. 136, 148-49, 209 P.3d 711 (2009), which applied *Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009). *Daniel*, 291 Kan. at 491-92. Our Supreme Court in *Daniel* allowed the State to

6

argue for the first time on appeal that the exclusionary rule does not apply to evidence obtained by police who acted in objectively reasonable reliance upon a statute that was subsequently declared unconstitutional. 291 Kan. at 492-93. The court ultimately held that the good-faith exception applied and upheld the vehicle search. 291 Kan. at 505.

Easley's case is procedurally similar to the situation in *Daniel*. Here, the State's good-faith argument involves only a question of law:  whether the good-faith exception to the exclusionary rule should apply to a warrantless breath test. The underlying facts were stipulated by the parties in district court, and no further factual development is necessary to resolve the issue. The State has argued the applicability of the good-faith exception at its first opportunity to do so after K.S.A. 2014 Supp. 8-1025 was declared unconstitutional. The parties have been provided with an adequate opportunity to brief the issue. Thus, we conclude that the State can invoke the good-faith exception to the exclusionary rule for the first time on appeal because the newly asserted theory involves only a question of law based on proved or admitted facts and is determinative of the case.

Whether the good-faith exception applies is a question of law over which an appellate court has unlimited review. See *State v. Carlton*, 297 Kan. 642, 645, 304 P.3d 323 (2013) ("The only remaining inquiry is whether the appropriate remedy is to suppress the evidence seized. This is a question of law."); *Daniel*, 291 Kan. at 496.

There is no express constitutional prohibition against using illegally obtained evidence; however, the exclusionary rule, which is a judicially created remedy, prohibits "the use of unconstitutionally obtained evidence in a criminal proceeding against the victim of an illegal search." *Daniel*, 291 Kan. at 496 (citing *Illinois v. Krull*, 480 U.S. 340, 347, 107 S. Ct. 1160, 94 L. Ed. 3d 364 [1987]). The purpose of the exclusionary rule is to protect Fourth Amendment rights through deterrence, but it is not a personal constitutional right of a defendant. *United States v. Leon*, 468 U.S. 897, 906, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984).

7

The United States Supreme Court in *Krull* carved out an exception to the exclusionary rule when a law enforcement officer, in good faith, reasonably relies on an unconstitutional statute because suppression does not further the rule's deterrent intent:

> "Unless a statute is clearly unconstitutional, an officer cannot be expected to question the judgment of the legislature that passed the law. If the statute is subsequently declared unconstitutional, excluding evidence obtained pursuant to it prior to such a judicial declaration will not deter future Fourth Amendment violations by an officer who has simply fulfilled his responsibility to enforce the statute as written." 480 U.S. at 349-50.

Our Supreme Court recognized and applied the good-faith exception as articulated in *Krull* for the first time in *Daniel*. Noting that the good-faith exception is not unlimited, our Supreme Court echoed the United States Supreme Court's admonition in *Krull* that in order for the good-faith exception to apply, the officer's reliance on a statute must be objectively reasonable. *Daniel*, 291 Kan. at 500 (citing *Krull*, 480 U.S. at 355). A law enforcement officer cannot claim good-faith reliance on a statute if a reasonable officer should have known that the statute was unconstitutional. 291 Kan. at 500 (citing *Krull*, 480 U.S. at 355). Additionally, reliance on a statute is not objectively reasonable if the legislature "'wholly abandoned its responsibility to enact constitutional laws'" when passing the statute. 291 Kan. at 500 (quoting *Krull*, 480 U.S. at 355).

Returning to our facts, at the time of Easley's arrest, Miller was required by K.S.A. 2014 Supp. 8-1001(k)(4) to inform Easley that he could face criminal penalties if he refused to submit to any method of blood alcohol testing. Also, at the time of Easley's arrest, Kansas courts had consistently upheld the constitutionality of warrantless breath tests undertaken pursuant to K.S.A. 8-1001. See, e.g., *Martin v. Kansas Dept. of Revenue*, 285 Kan. 625, 635, 176 P.3d 938 (2008); *Furthmyer v. Kansas Dept. of Revenue*, 256 Kan. 825, 835, 888 P.2d 832 (1995); *Popp v. Motor Vehicle Department*, 211 Kan. 763, 767, 508 P.2d 991 (1973).

8

Miller had no reason to know that the implied consent advisories would be found impermissibly coercive two years after Easley's arrest, and K.S.A. 2014 Supp. 8-1001(k)(4) was not so clearly unconstitutional at the time of Easley's arrest that a reasonably well-trained officer would have known that it was unconstitutional. By giving the advisories and informing Easley that he could be charged with a separate crime for refusing to submit to a breath test, Miller was merely fulfilling her responsibility to enforce the statute as written, and suppression would not serve the deterrent aim of the exclusionary rule.

Furthermore, there is no indication that in enacting either K.S.A. 2014 Supp. 8-1025 or K.S.A. 2014 Supp. 8-1001(k)(4), the Kansas Legislature wholly abandoned its responsibility to pass constitutional laws. Other states had statutes similar to K.S.A. 2014 Supp. 8-1025 and continued to uphold them until the United States Supreme Court ruled in *Birchfield* that these types of criminal penalty laws are unenforceable as to blood tests. See, e.g., *Wing v. State*, 268 P.3d 1105, 1109-10 (Alaska App. 2012) (upholding the constitutionality of an Alaska statute criminalizing the refusal to submit to blood-alcohol test); *State v. Bernard*, 859 N.W.2d 762, 774 (Minn. 2015) (Minnesota statute that criminalizes refusal to submit to blood-alcohol test passes rational basis review).

In sum, the good-faith exception applies here. There is nothing to suggest that at the time of Easley's arrest, Miller should have known that the criminal penalty statute was unconstitutional and that the Kansas implied consent advisories were coercive, nor is there any indication that the Legislature wholly abandoned its duty to enact constitutional laws in passing the statute. When Miller advised Easley that failure to submit to the breath test constituted a separate crime, Miller was only doing what she was required by law to do. Suppressing Easley's breath test results would not serve the purpose of the exclusionary rule, which is to deter police misconduct. Thus, while the district court based its decision to deny Easley's motion to suppress his breath test results on the wrong ground, we uphold the district court's decision as being correct for the wrong reason. See

*State v. Overman*, 301 Kan. 704, 712, 348 P.3d 516 (2015) (district court's decision will be upheld even though it relied upon the wrong ground). Because we find the good-faith exception to the exclusionary rule applicable in this instance, we need not address the State's argument that Easley's breath test results are admissible under the search incident to arrest exception to the warrant requirement.

Affirmed.